IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-CV-00796-MEH

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1. **121 ASH ROAD, BASALT, COLORADO**;
2. APPROXIMATELY $77,888,782.61 HELD AND FROZEN IN MIRABAUD BANK ACCOUNT #509951,

        Defendants.

_____

**GOVERNMENT'S OPPOSED MOTION TO STRIKE CLAIM OF HENKE PROPERTY LLC**
_____

COMES NOW the United States of America (the "United States"), by and through United States Attorney Cole Finegan and Assistant United States Attorneys Tonya S. Andrews and Laura B. Hurd, pursuant to Rule G(8) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (hereinafter, "the Supplemental Rules"), and moves to strike the claim and answer of Henke Property LLC, or in the alternative, cure with a properly authorized representative.

Pursuant to D.C.COLO.LCivR 7.1(a), the United States conferred with counsel for Henke Property LLC, who opposes the relief requested herein.

<u>**STATEMENT OF FACTS**</u>

**I.     Procedural History**

1.     On March 18, 2021, pursuant to the civil forfeiture provisions of 18 U.S.C. §§ 981(a)(1)(A) and (C), the United States filed a Verified Complaint for Forfeiture *In*

1

*Rem*, alleging the above-captioned defendant assets are subject to forfeiture based on violations of 18 U.S.C. §§ 1956, 1957, 1343, and 1344.  (ECF No. 1).  The same day, the United States also filed a Notice of Lis Pendens regarding the Ash Road property. (ECF No. 2).

2.      On June 9, 2021, Henke Property LLC (sometimes referred herein as "Henke Property") filed a Claim stating its interest in the Ash Road property, which Henke Property purchased in December 2010.  (ECF No. 14).  On behalf of Henke Property, the claim was signed and verified under penalty of perjury by Henke Property's purported Authorized Representative, Carl B. Linnecke. (ECF No. 14-3).

3.      On June 30, 2021, Henke Property filed its Answer, denying any factual or legal basis for the United States' claims with respect to the Ash Road property.  (ECF No. 17, ¶ 1).  Henke Property admitted that Evatt Tamine is the manager of Henke Property LLC and that Mr. Linnecke worked "as a property manager for 121 Ash Road." (ECF No. 17, ¶¶ 8, 85).  However, for the majority of the paragraphs under the factual basis for forfeiture, Henke Property denied having knowledge of its own actions and those of its director, Regency Management Ltd.; it's owner, Henke Holdings, LLC ("Henke Holdings"); and its manager, Evatt Tamine, stating: "Henke is without knowledge or information sufficient to admit or deny the allegations . . . and on that basis, denies them." *See e.g.* (ECF No. 17 at ¶¶ 7, 12-13, 27, 29-34, 38-53, 64-66, 69, 71-74, 76, 81, 89, 91-92, 95, 99-101, 103-105, 107-108; denial in part, ¶¶ 8, 75, 77-79, 82, 84-86). The answer was verified under penalty of perjury by Mr. Linnecke, as the purported Authorized Representative for Henke Property.  (ECF No. 17, p. 19).

4.      On October 13, 2021, the Court held a Scheduling Conference (ECF No.

31) and entered a Scheduling Order (ECF No. 32), which, in relevant part, specified that

the following facts are undisputed:

a.      Defendant 121 Ash Road is titled to Henke Property.
b.      Evatt Tamine is the manager of Henke Property.
c.      Evatt Tamine gave direction relating to the purchase and
improvements to defendant 121 Ash Road.
d.      Henke Property is 100% owned by Henke Holdings.
e.      Henke Property and Henke Holdings were formed in Colorado on
September 7, 2005.
f.      Regency Management Ltd. is the sole director of Henke Property.
g.      From May 25, 2011 through August 27, 2014, there were at least
28 wire transfers, totaling at least $10,550,000.00 from Regency
Management Ltd.'s Bermuda Commercial Bank account #06-801-
200717-01 to Henke Property's Wells Fargo account #9042-
018029.  Improvements to defendant 121 Ash Road were paid for
with these funds.  Robert T. Brockman (defendant in *U.S. v.
Brockman*, S.D. Tex., No. 4:21-cr-00009-1) frequently used
defendant 121 Ash Road, Basalt, Colorado during the summer.

(ECF No. 32, p. 2-3).

5.      On September 23, 2021, the Government emailed counsel for Henke

Property.  The Government stated that Henke Property's Answer appeared deficient

because Henke Property responded to many of the paragraphs in the Complaint stating

it had insufficient information or lacked knowledge that clearly would have been within

the scope of knowledge by agents, managers, and members of Henke Property.  *See

e.g.* ECF Doc. 17 ¶ 81 (Henke stated they had insufficient knowledge of the escrow

documents reflecting the wire transfers from Regency Management Ltd, to the seller of

defendant 121 Ash Road for the purchase of the property).  Specifically, despite

acknowledging that Evatt Tamine is the manager of Henke Property, Henke Property

denied knowledge of Tamine's actions and statements in relation to Henke Property and

defendant 121 Ash Road. *See e.g.*  ECF Doc. 17 ¶ 77 (Henke Property pleaded

insufficient knowledge regarding Mr. Tamine's statements regarding who directed him on the development, land purchase, and funding for defendant 121 Ash Road).

6.      In the same correspondence regarding the Answer, the Government sent Henke Property Special Interrogatories authorized by Rule G(6) of the Supplemental Rules, requesting that Henke Property identify (1) all members, managers, and directors with authority to make legally binding decisions for the company and (2) the basis for Carl Linnecke's authority to represent Henke Property in its claim.  The Government sent the Special Interrogatories due to Mr. Linnecke's status as a non-member property manager of the company, as well as the Answer's deficiencies as it relates to the company's knowledge of its own actions and those of its manager, Mr. Tamine, and its member and director, Regency Management, Ltd.

7.      Henke Property responded to Special Interrogatories One and Two, but it objected to and failed to answer Special Interrogatories Three through Six, asserting that those inquiries were outside the scope of Supplemental Rule G(6).  Shortly thereafter, the Government renewed its request for Henke Property to provide the basis for Mr. Linnecke to act as an authorized representative on behalf of Henke Property by signing the Claim, as articulated in Special Interrogatory number Three.

8.      Henke Property amended its answers to Special Interrogatories Two, Three, and Six.  *See* Exhibit 1.  Specifically, in its Amended Responses to Special Interrogatories, Henke Property admitted that Mr. Linnecke is an "agent for Henke Property LLC for the purpose of managing, operating, and developing real properties owned by Henke Property LLC," but does not identify Mr. Linnecke as a member, managing-member, or owner.  Exhibit 1, Response to No. 3.  In response to Special

Interrogatory Number One, Henke Property admitted that Henke Holdings is a member and manager of Henke Property, and Regency Management Ltd. is a member and director.   In response to Special Interrogatory Number Two, Henke Property identified that the "members, managers, directors, and individual(s) who have authority to make legally and binding decisions for Henke Property LLC from the date of Henke Property LLC's formation to the date of the filing of Henke Property LLC's Claim" are as follows: Henke Holdings; Regency Management Ltd.; Carl Linnecke; Peter Poole; and Evatt Tamine.  Henke Property further stated that the February 25, 2013 document titled, "Appointment of Agent," authorized Mr. Linnecke to act on behalf of Henke Property in its forfeiture claim as the authorized representative.  *See Id*. Response to No. 3.

9.      Henke Property also indicated to undersigned counsel that it intended to file an Amended Answer but has not yet done so.  The deadline for amendment of pleadings was November 26, 2021.  (ECF Doc. 32, p. 8).

## II.      Henke Property LLC Operating Documents

10.      Henke Property's Operating Agreement states that the purpose of the company is to, "engage in the transaction of any lawful business."  Henke Holdings was designated as the sole manager[1] and sole member of Henke Property.  In section 4.1, the Operating Agreement designates Henke Property as a manager-managed company:

> "The management of the Company shall be vested in the manager, Henke Holdings, LLC, who shall have, with respect to the Company and its business and affairs, all of the powers of a manager under the LLC Act and who shall exercise all powers of the company."

---

[1] Although the Operating Agreement states that Henke Holdings is the sole manager of Henke Property, in its Answer, Henke Property states that Evatt Tamine is its manager.  (ECF No. 17).

Section 4.2 appoints the manager, Henke Holdings, as its agent:

> "The manager shall be an agent of the Company.  The execution or delivery by the manager on behalf and in the name of the Company of any documents shall constitute conclusive evidence of
>
> > (a) the manager's power and authority on behalf and in the name of the Company to execute and deliver such document;
> > (b) the power and authority of the Company to execute and deliver such document and to perform all obligations (if any) of the Company provided therein; and
> > (c) the truth of any statement contained therein as to any action taken or to be taken by the manager or the Company (including such matters as formation, existence, power and authority, authorization, execution or delivery, the identities and genuine signatures of the manager or agents of the Company and the existence or nonexistence of any fact constituting a condition precedent to the taking of any action by any of the foregoing)
>
> **The manager may, by a written instrument, appoint other agents of the Company as it may elect from time to time."**

The Operating Agreement is signed by Peter Poole, manager of Henke Holdings.  Henke Property Operating Agreement, Exhibit 2 (emphasis added).   Evatt Tamine is a manager of Henke Holdings.

11.    On February 25, 2013, Henke Property executed a document titled "Appointment of Agent," which appointed Mr. Linnecke as an agent of Henke Property, but limited his authority to actions related to the property management, operating, and development of LLC-owned properties, not to include the authority to take any action affecting title to the properties:

> "for the purpose of managing, operating and developing the Properties [owned by Henke Property], with the authority to

take such action with respect thereto as he shall determine to be in the best interest of the Company, including, without limitation, the authority to execute such contracts, agreements and other instruments and documents as he may deem necessary or appropriate in connection with the management, operation and/or development of the Properties; provided, **however, the authority granted to Agent hereunder shall not include the authority to sell, transfer, mortgage, or take any other action affecting title to any of the Properties."**[2]

2013 Appointment of Agent, Exhibit 3 (emphasis added). The Appointment of Agent document was executed by Henke Holdings and signed by Henke Holdings manager Evatt Tamine. *See* 2013 Appointment of Agent, Exhibit 3.

12. On September 15, 2014, Henke Property amended the Appointment of Agent document, authorizing Mr. Linnecke to execute documents for annexation of "Lot 11" land and termination of an associated covenant. This was also signed by Evatt Tamine as manager of Henke Holdings. *See* 2014 Appointment of Agent, Exhibit 4.

## LEGAL ARGUMENT

Henke Property has submitted a Claim and Answer signed and verified by Carl Linnecke, as purported authorized representative for Henke Property. According to the responses to the Special Interrogatories, Mr. Linnecke claims his authority to represent Henke Property is reflected in the Appointment of Agent dated February 25, 2013. However, neither this document nor any other legal authority provides Mr. Linnecke with the authority to act on behalf of Henke Property in this case. Accordingly, without a properly authorized representative Henke Property lacks standing and its claim should

---

[2] In Henke Property's Amended Responses to Special Interrogatories, the language from the Appointment of Agent regarding Mr. Linnecke's inability to take actions affecting title was not referenced. *See* Exhibit 1, Response No. 3.

7

be stricken, or in the alternative, cured under Fed. R. Civ. P. 15 with a properly authorized representative.

## I.      Overview of Applicable Forfeiture Law

### A.      Supplemental Rule G(8) Authorizes the Court to Strike Claims for Lack of Standing

In a civil asset forfeiture case, the United States is the plaintiff, the property is the defendant, and any claimant asserting an interest in the property must intervene. *United States v. $20,000.00 in U.S. Currency*, 350 F. Supp. 3d 1148, 1154 (D.N.M. 2018) (citing *United States v. $148,840.00 in U.S. Currency,* 521 F.3d 1268, 1273 (10th Cir. 2008)).  In order to intervene, Supplemental Rule G(5)(a)(i) requires that an intervenor file a claim.  *See* Supp. R. G(1) (Rule G "governs a forfeiture action in rem arising from a federal statute."); Supp. R. G(5)(a)(i) ("A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim . . .").  The claim must identify what specific property is being claimed, identify the claimant and their interest in the property, be signed under penalty of perjury, and be served on the government. Supp. R. G(5)(a)(i)(A)-(D).  When a legal entity files a claim, it may specifically authorize an agent to sign the claim on its behalf.  *See* Supp. R. G., advisory committee's note, sub. 5(a) (2006) ("The claim must be signed under penalty of perjury by the person making it.  An artificial body that can act only through an agent may authorize an agent to sign for it.").

In turn, Rule G(8)(c) states, in part, that the government may move to strike a claim or answer for lack of standing. The issue of standing must be determined at the earliest stage because "[a] claimant who lacks standing is not entitled to challenge the forfeiture on the merits."  Supp. R. G., advisory committee's note, sub. 8(c)(ii) (2006).

**B.      A Claimant Must Have Standing**

After a claim is filed, the claimant must establish both Article III and statutory

standing.  *$20,000.00 in U.S. Currency*, 350 F. Supp. 3d at 1155; *see $148,840.00 in*

*U.S. Currency*, 521 F.3d at 1273 ("a claimant bears the burden of establishing his own

constitutional standing at all stages in the litigation.").  Under Article III standing

jurisprudence, the Court must determine if the intervenor claimant has "a personal stake

in the outcome of the controversy."  *Baker v. Carr*, 369 U.S. 186, 204 (1962); *see e.g.*

*United States v. Brunson*, 89 F.3d 851 (table), 1996 WL 306438, at *2 (10th Cir. 1996)

(defendant "cannot assert his ex-wife's interest in the property; he no longer claims a

personal stake in that property.").  Thus, the claimant must "be able to show at least a

facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy

requirement and the prudential considerations defining and limiting the role of the court."

*United States v. $11,780.00 in U.S. Currency*, No. 05-222 MV/DJS, 2007 WL 9734852,

at *2 (D.N.M. Feb. 5, 2007) (citing *Kadonsky v. United States*, 216 F.3d 499, 508 (5th

Cir. 2000)).

In addition to Article III standing, a claimant must have statutory standing.  *United*

*States v. 8 Pieces of Assorted Jewelry*, No. 19-cv-01439-SKC, 2020 WL 4350197 at *1

(D. Colo. July 29, 2020) (citing *United States v. $487,825.00*, 484 F.3d 662, 664 (3d Cir.

2007)).  Courts have consistently held that a claimant's failure to strictly comply with the

requirements of Supplemental Rule G means that the claimant lacks statutory standing

to contest the forfeiture, and their claim may be stricken in accordance with Rule

G(8)(c).  *Id.* at *2 (citation omitted); *$20,000.00 in U.S. Currency*, 350 F. Supp. 3d at

1157 ("Courts have required claimants to strictly comply with Supplemental Rule G(5)'s

provisions."); *United States v. $5,565.00 in U.S. Currency*, No. 09-cv-02212-WDM-MEH, 2010 WL 4256211, at *2 (D. Colo. Sept. 20, 2010) ("The requirements set forth in the Supplemental Rules 'must be strictly enforced.'"), *report and recommendation adopted*, 2010 WL 4222047 (D. Colo. Oct. 20, 2010).   "The authority to file a claim is part of the statutory-standing equation."  *United States v. ADT Sec. Servs., Inc.*, 522 F. App'x 480, 492 (11th Cir. 2013) (claimant without authority to file a claim on behalf of a limited liability company lacked standing).

A legal entity such as a limited liability company must be represented in a civil forfeiture case by an individual with proper authority to act on the company's behalf in litigation.[3]  The representative must have authority; otherwise, they lack standing.  *See e.g. United States v. All Funds in the Acct. of Prop. Futures, Inc.*, 820 F.Supp.2d 1305, 1329-32 (S.D. Fla. 2011) (claimants, who had the burden of establishing standing by a preponderance of the evidence, failed to establish the authority to file claims on behalf of the LLCs); *United States v. Young*, 77 F. Supp. 3d 1191, 1192 (D. Utah 2014) (a member of an LLC lacked standing to file a civil forfeiture claim absent the authority to act on behalf of the LLC under state law);  *United States v. 2014 Nissan Altima 2.5L VIN 1N4AL3AP9EC195679*, 853 F. App'x 27, 29 (7th Cir. 2021) (individual lacked standing to represent his company's interest in civil forfeiture action where he failed to produce evidence that he was the successor in interest); *United States v. One 2009 Maserati Granturismo,* No. ED CV 15-2361 PA, 2016 WL 4502457, at *1 (C.D. Cal. June 6, 2016) (finding individual lacked standing to file on behalf of corporation where corporation was

---

[3] The United States does not dispute that Henke Property LLC would have Article III standing as the title owner if the claim was filed by an individual with proper authority to assert its rights in this litigation.

in bankruptcy; only bankruptcy trustee had authority to file a claim on behalf of corporation).

As discussed below, Mr. Linnecke states the 2013 Appointment of Agent gives him the authority to proceed in this matter on behalf of Henke Property; however, it does not.  Mr. Linnecke lacks standing. Therefore, the Claim filed by him as the purported authorized representative is deficient.

## II.    Overview of Applicable Agency Law

By operation of law, decisions with respect to limited liability companies can only be made by members or managing-members.  *See* Colo. Rev. Stat. § 7-80-401 ("Management of limited liability company").  Otherwise, the authority to act on behalf of an LLC by anyone other than a member or manager must be established by the majority of the members or managers. *See* Colo. Rev. Stat. § 7-80-403.  Mr. Linnecke is not a member, managing-member, nor does he have any ownership interest in defendant 121 Ash Road, or any other property associated with Henke Property.[4]  Mr. Linnecke's role within Henke Property is an employee property manager.  Accordingly, because Mr. Linnecke is not authorized to represent the limited liability company by virtue of his role, Mr. Linnecke must be designated by Henke Property to act as the authorized agent of the company *in this litigation*.  *See e.g*. Colo. Rev. Stat. § 7-80-403(2) (if the operating agreement does not state differently "agents may be given authority to do any act that is not in the ordinary course of the business of the limited liability company only with the consent of all of the members.").

---

[4] The Court should look to "state law to determine what property interests" exist. *United States v. Eight Hundred Sixty Thousand Three Hundred & Ten Dollars ($860,310) in U.S. Currency*, 10 F. App'x 796, 797 (10th Cir. 2001).

Under Colorado law, a limited liability company may appoint agents with such rights, duties, and authority as the limited liability company may determine. Colo. Rev. Stat. § 7-80-403(1).  For an agent to act, the agent must have actual or apparent authority to take such action.[5]  *Rooftop Restoration*, 2017 WL 11543176 at *3; *Scott v. Honeywell Int'l Inc.*, No. 14-cv-00157-PAB-MJW, 2016 WL 1077264, at *3 (D. Colo. Mar. 18, 2016).  "Actual authority is that authority which is in fact given to an agent." *Scott*, 2016 WL 1077264, at *3 (citation and quotation marks omitted).  The party who asserts an agency relationship has the burden to prove that the scope of the agent's authority encompasses a particular act.  *See Am. Movie Classics v. Rainbow Media Holdings*, 508 F. App'x 826, 830 (10th Cir. 2013) (As the party claiming an agency relationship, it is their burden to prove that the scope of its authority included the authority for a specific action.).  Mr. Linnecke bears the burden to establish that he has actual authority to file a claim and intervene in this action as an authorized representative on behalf of Henke Property.   He cannot meet his burden.

III.    **Mr. Linnecke Lacks Article III Standing**

A.    **Mr. Linnecke's 2013 Appointment of Agent Prohibits him from Serving as the Authorized Representative in this Civil Forfeiture Case**

Henke Property has expressly prohibited Mr. Linnecke from proceeding as an authorized representative.  The Appointment of Agent, on which he relies, states the following:

---

[5] Because the government, as the third-party, is not relying on the apparent authority of Mr. Linnecke to act as an authorized representative for Henke Property in this matter, Mr. Linnecke must have actual authority to act on Henke Property's behalf in filing a claim.  *See Rooftop Restoration v. Ohio Sec. Inc. Co.*, No. 15-cv-00620-LTB-KLM, 2017 WL 11543176, at *3 (D. Colo. July 12, 2017) ("Apparent authority is created to protect third parties who, in good faith, rely upon their belief that an agency relationship exists between the apparent principal and agent.").

> the authority granted to Agent hereunder **shall not include
> the authority to sell, transfer, mortgage*, or take any
> other action affecting title to any of the Properties.**

Exhibit 3 (emphasis added).

A civil forfeiture case *in rem* is an action to determine rightful ownership and title between the Government and a purported owner.  *In re Matthews*, 395 F.3d 477, 481 (4th Cir. 2005) ("the purpose of an *in rem* forfeiture action is to conclusively determine ownership rights in the seized property.") (citing Restatement (Second) of Judgments § 6 cmt. b (1982)) (the purpose of "true" *in rem* actions such as government forfeiture proceedings is "to reach a conclusive determination of all claims to the thing so that it may be transferred to . . . a person who will then hold it free and clear of all claims").

Indeed, Congress specifically passed 18 U.S.C. § 981(f), otherwise known as the "relation-back doctrine," which states that the Government's title vests in the property upon the commission of the act giving rise to forfeiture.  18 U.S.C. § 981(f).  The relation-back doctrine means that the Government has unperfected title to the defendant property and "ownership will retroactively vest in the government from the time the illegal act was committed upon a judicial quieting of title to the property in favor of the government."  *United States v. Clymore*, 245 F.3d 1195, 1200 (10th Cir. 2001) (explaining the relation back doctrine in 21 U.S.C. § 881, which has nearly identical language to 18 U.S.C. § 981(f)).  The Government has alleged that the acts giving rise to forfeiture occurred at the time the defendant property was purchased.  (ECF No. 1, ¶¶ 76-77, 81-82).  Accordingly, if the Government is successful in establishing forfeitability, all right, title, and interest in the defendant property will have vested to the United States

instead of Henke Property at the time of that purchase.  In sum, Henke Property will no longer be the title owner of the property.

Because *in rem* forfeiture actions determine title to property, Mr. Linnecke cannot act as the authorized representative without additional authorizing authority. This conclusion is bolstered by the acts of Henke Property itself.  Henke Property has previously interpreted the words "any action affecting title" as a specific limitation to Mr. Linnecke's authority, as evidenced by the September 14, 2014 amendment to the Appointment of Agent document.  *See* Exhibit 4.  In that amendment, Henke Property explicitly granted Mr. Linnecke the authority to execute documents related to the annexation of "Lot 11" land and the termination of an associated covenant.  Thus, Henke Property understood that the initial Appointment of Agent would not cover such acts because they affected titled, and very explicitly and conservatively extended Mr. Linnecke's authority to only a specific annexation and the termination of a covenant. Given Henke Property's prior interpretation of Mr. Linnecke's authority under the Appointment of Agent, this Court should similarly interpret that "any action affecting title" prohibits Mr. Linnecke from acting on behalf of Henke Property in its civil forfeiture Claim without a further amendment to his Appointment of Agent and scope of authority.

Because Mr. Linnecke is prohibited from taking any "action affecting title to any of the Properties" he does not have authority to file a claim on behalf of Henke Property in this case.  Thus, he lacks standing to assert any interest or rights on behalf of Henke Property.  *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (a party "generally must assert [their] own legal rights and interests, and cannot rest [their] claim to relief on the legal rights or interest of third parties.").  Thus, given that the Appointment of Agent

prohibits Mr. Linnecke from acting in this case, he is clearly not the proper authorized representative for the company.

**B.     Mr. Linnecke Lacks Actual Authority to Represent Henke Property in Litigation**

Assuming, *arguendo*, that the provision prohibiting Mr. Linnecke from taking actions affecting title did not exist, Mr. Linnecke is also not authorized because he does not have actual authority to file lawsuits or enter into litigation on behalf of Henke Property.

In Colorado, an agent's actual authority may be express or implied.  *Willey v. Mayer*, 876 P.2d 1260, 1264 (Colo. 1994).  Express authority is directly stated by the principal specifying the agent's authority to perform a particular act.  *Id*.  Implied authority is that authority to do "those acts which are incidental to, or are necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent."  *Id*. (citation and quotation marks omitted).  A limited liability company can "sue and be sued, complain and defend, and participate in administrative or other proceedings, in its name."  Colo. Rev. Stat. § 7-80-104(1)(a).  However, the decision to sue others on behalf of a limited liability company and decisions related to a lawsuit involving a limited liability company can only be made by an agent with proper authority. *See e.g.  Ghaem v. Noyes*, No. 2013CV033466, 2014 WL 12939076 (Colo. Dist. Ct. July 29, 2014) (prior owner conceded he lacked authority to sue on behalf of LLC once all of his interest in the LLC was transferred and LLC did not authorize the suit).

Mr. Linneke bears the burden to establish his authority encompasses the act of filing a claim on behalf of Henke Property and intervening in this forfeiture case. *Am. Movie Classics,* 508 F. App'x at 830.  Given the nature of the documents relied upon by

Mr. Linnecke, he does not have authority to sue or defend suit on behalf of Henke Property.

Mr. Linnecke was granted actual express authority to act as an agent on behalf of Henke Property for the execution of documents related to the **"management, operation, and/or development of the Properties . . . ."** Exhibit 3 (emphasis added). This authorization is insufficient to establish standing by Mr. Linnecke to file a claim in this case because it does not grant actual authority, express or implied, to file, intervene, or defend suit on behalf of Henke Property, especially in any litigation affecting ownership of limited liability company property.

The filing of a claim on behalf of Henke Property cannot reasonably be understood to be within the scope of Linnecke's actual authority in handling the "management, operation, and/or development of the Properties." It is clearly not expressly provided for in the Appointment of Agent. *See* Exhibit 3. Likewise, the filing of a claim is also not "incidental to, or . . . necessary, usual, and proper to accomplish or perform" his duties as a property manager who oversees "the management, operation, and development of a property" such that he would have implied authority to file a claim.[6] This is especially true when the underlying litigation—an allegation that the property was purchased with fraud proceeds—is entirely separate and apart from any managerial, operational, or development of the property itself. Put simply, this litigation does not affect the acts Mr. Linnecke was given actual authority to perform—the management, operation, or development of the defendant property; rather, it affects the

---

[6] The Government has not seized the defendant real property or interfered in the property management. The Government has only filed a *lis pendens* authorized under 18 U.S.C. § 985.

one thing Mr. Linnecke is expressly excluded from having authorization to do—taking actions affecting title.

Mr. Linnecke has no individual stake in this litigation. Because he does not have an ownership interest in Henke Property and does not have proper authority from the company, he lacks constitutional standing. *See All Funds in the Acct. of Prop. Futures,* 820 F. Supp. 2d at 1329 ("just as shareholders in a corporation do not have Article III standing to contest the forfeiture of corporate property, the LLC minority-member Claimants in this case likewise have no Article III standing to contest the forfeiture of the Defendant Properties owned by the Buyer/Lessor LLC").

## IV.   The Claim Filed by Mr. Linnecke Lacks Statutory Standing

Supplemental Rule G(5)(i)(C) requires a claim to be signed and verified by the claimant, or an authorized representative with sufficient authority to act on behalf of the claimant, under the sworn penalty of perjury. *See e.g. United States v. Four Thousand Two Hundred Seventy-Eight Dollars*, No. 12-10253, 2014 WL 3420774, at *5 (E.D. Mich. July 14, 2014) (finding, without discussion, that the president had authority to file a claim on behalf of corporation when signed under penalty of perjury). "[T]he oath [in the claim] must be made by a person with personal knowledge of the facts alleged therein." *Id.*; *see also Ausmus v. People*, 47 Colo. 167, 174, 107 P. 204, 208 (Colo. 1909) ("A verification is a sworn statement of the truth of the facts stated in the instrument verified."). A claim filed by an unauthorized representative without sufficient personal knowledge of the facts fails to meet the requirements of Supplemental Rule G(5).

Here, Henke Property's claim lacks statutory standing because it was not signed and verified by an agent with knowledge or the authority to file on its behalf.  In addition to the lack of authority, Mr. Linnecke's lack of company knowledge, and therefore, standing to file a claim, is evident in the Answer.  Facts and events that are within the purview of knowledge of Henke Property, through its agents, managers, and members, are denied for "insufficient knowledge."  For example, Henke Property denied having knowledge of the wire transfers used to purchase the Ash Road property.  ECF Doc. 17 ¶ 81 (claim of insufficient knowledge of the escrow documents reflecting the wire transfers from Regency Management Ltd, to the seller of defendant 121 Ash Road for the purchase of their property).  One can surmise that this is because Mr. Linnecke, himself, lacks knowledge—not Henke Property.  *See e.g. Casson Const. Co., Inc. v. Armco Steel Corp.*, 91 F.R.D. 376, 382 (D. Kan. 1980) (discussing that a corporation appoint a person to compile discovery and answer discovery requests by signing "on behalf of the corporation not himself.").  This using of Mr. Linnecke as both a sword (signing a claim on behalf of Henke Property) and a shield (denying knowledge of relevant information) is exactly why the applicable rules require the claim to be signed and verified by an authorized agent.

Moreover, as alleged in the Complaint, several companies including Henke Property were used to disguise the actual beneficial owner, Mr. Robert Brockman's, interests.  The Henke Property claim was verified by a property manager who lacks authority, has no ownership or membership role in the company, and who does not appear to have knowledge of Henke Property's actions.  Such a claim is not properly verified by the claimant.  *See e.g. United States v. $9,020.00 in U.S. Currency*, 30 F.

App'x 855, 857 (10th Cir. 2002) (noting the "purpose of the verification requirement is to prevent false claims."); *see also $20,000.00 in U.S. Currency*, 350 F. Supp. 3d at 1161 (citing to the following: *United States v. JP Morgan Chase Bank Account Number Ending 8215*, 835 F.3d 1159, 1165 n.6 (9th Cir. 2016) (the verification requirement "serves to protect against the proliferation of false claims in asset-forfeiture proceedings."); *United States v. $487,825.00*, 484 F.3d 662, 664-65 (3d Cir. 2007) (the requirement that a claimant file a timely verified claim serves two purposes: it forces claimants to come forward as quickly as possible, and it minimizes the danger of false claims); *United States v. $125,938.62,* 370 F.3d 1325, 1328 (11th Cir. 2004) (a verified claim is essential to conferring statutory standing and is necessary to deter the filing of false claims; the claim must be verified by the claimant).

Lastly, Mr. Linnecke's authority is critical.[7]  Without the proper authority (and knowledge), he will be unable to bind Henke Property to discovery responses, or meaningfully respond.  Likewise, any potential settlement or settlement discussions could be jeopardized by his lack of authority to act as an agent on behalf of Henke Property.  In fact, if Mr. Linnecke is acting without proper authority there is a real danger of ancillary litigation or re-litigation of issues decided by this Court.  Finally, at this juncture, the Government is particularly concerned that it may also be obligated to provide sensitive information to an individual without the proper authority to receive such information.

---

[7] In fact, Mr. Linnecke would be personally liable to the company if he lacks proper authority. Colo. Rev. Stat. § 7-80-105 ("All persons who assume to act as a limited liability company without authority to do so and without good-faith belief that they have such authority shall be jointly and severally liable for all debts and liabilities incurred by such persons so acting.").

Given that Henke Property's standing depends upon the representative's authority to assert it, and Mr. Linnecke is without such authority, Henke Property lacks standing.

## **CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court strike the claim of Henke Property pursuant to Supplemental Rule G(8)(c), or in the alternative, require Henke Property to cure with a properly authorized representative under Fed. R. Civ. P. 15.

DATED this 19th day of January 2022.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By: s/ *Tonya S. Andrews*
Tonya S. Andrews
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California St., Ste 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mail: tonya.andrews@usdoj.gov
*Attorney for the United States*

By: s/ *Laura Hurd*
Laura B. Hurd
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California St., Ste 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mail: laura.hurd@usdoj.gov
*Attorney for the United States*

20

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of January 2022, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notice to all counsel of record and true copies were mailed via regular and certified mail to:


s/*Sheri Gidan*
FSA Records Examiner
U.S. Attorney's Office