IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-00796-MEH

UNITED STATES OF AMERICA,

  Plaintiff,

v.

1. 121 ASH ROAD, BASALT, COLORADO,
2. APPROXIMATELY $77,888,782.61 HELD AND FROZEN IN MIRABAUD BANK ACCOUNT #509951,

  Defendants,

and

EDGE CAPITAL INVESTMENTS, LTD.,

  Claimant.

---

## CLAIMANT EDGE CAPITAL INVESTMENTS, LTD.'S
## MOTION TO DISMISS VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

---

Claimant Edge Capital Investments, Ltd. ("Edge") respectfully moves to dismiss the Verified Complaint for Forfeiture *in Rem* ("Complaint") as against Defendant Approximately $77,888,782.61 Held and Frozen in Mirabaud Bank Account #509951 ("Defendant Funds"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and Supplemental Rule G(2) for Admiralty or Maritime Claims and Asset Forfeiture Actions.

The Complaint, which alleges civil forfeiture claims against Defendant Funds under Section 981(a)(1) of Title 18 of the United States Code, suffers a fatal flaw: it fails to sufficiently allege the Defendant Funds were themselves involved in or traceable to proscribed conduct. The Complaint alleges that six years passed between the deposit of alleged proceeds traceable to or

involved in predicate acts and the date when Defendant Funds were frozen in the Account. It fails, however, to allege any facts tracing the deposits in 2013/2014 to the funds frozen in 2020. That ***six-year gap*** falls woefully short of the "heightened particularity requirement" governing civil forfeiture complaints. *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013). Because the Complaint fails to state a claim against Defendant Funds, it should be dismissed as against Defendant Funds.

## **BACKGROUND**

In 2006, Universal Computer Systems, a company founded by Robert Brockman, acquired Reynolds & Reynolds, a provider of integrated software solutions for automotive dealerships.[1] Cmplt. ¶¶ 11, 15. Deutsche Bank AG New York was one of the lenders that financed the acquisition of Reynolds & Reynolds through three credit facilities and the administrative agent on all three credit agreements. Cmplt. ¶¶ 19, 22. The second and third lien credit agreements contained provisions prohibiting an affiliate from being an eligible assignee of the debt, which meant that Brockman was prohibited from purchasing second and third lien debt through an "Affiliate" as defined in the credit agreements. Cmplt. ¶¶ 24-26.

In 2009, at Brockman's direction, Edge purchased Reynolds & Reynolds second and third lien debt in the secondary debt market. Between March 4 and April 22, 2009, Edge, at Brockman's direction, executed 10 trades in Reynolds & Reynolds second and third lien debt with a total face value of $67.6 million for a total purchase price of $20.7 million. Cmplt. ¶¶ 51-

---

[1] The background presented here is drawn from the allegations of the Complaint, which are assumed to be true for purposes of a Rule 12(b)(6) motion to dismiss. In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor. *See Lincoln v. Maketa,* 880 F.3d 533, 537 (10th Cir. 2018). A court, however, is not compelled to accept unwarranted inferences, unsupported conclusions, or legal conclusions disguised as factual allegations. *See Hackford v. Babbitt,* 14 F.3d 1457, 1465 (10th Cir. 1994).

52. Edge's management thereafter executed and delivered Assignment & Assumption agreements to Deutsche Bank for each of the trades affirming that Edge was an eligible assignee under the second and third lien credit agreements, when in fact the debt allegedly was purchased on behalf of Brockman who was an affiliate of Reynolds & Reynolds.  Cmplt. ¶ 54.

In April 2010, Reynolds & Reynolds refinanced its debt, and second and third lien creditors, including Edge, were paid off at face value.  Cmplt. ¶¶ 69-70.  On April 21, 2010, Edge received a wire transfer in the amount of $67.8 million in its account at Bermuda Commercial Bank ("BCB"), representing the proceeds of the debt refinancing.

In November 2012, $15 million traceable to the proceeds of the Reynolds & Reynolds debt refinancing and interest were held in the Edge BCB account, and, upon Brockman's approval, allegedly were used to invest in SumTotal Systems through the purchase of debt.  Cmplt. ¶¶ 92-94.  From April 2013 through September 2014, Edge received $8 million in interest payments from the SumTotal debt investment, which were deposited into the Edge BCB account.  Cmplt. ¶ 96.  On October 2, 2014, Edge sold the SumTotal debt and received two wire transfers totaling $49.3 million into its BCB account.  Cmplt. ¶ 97.

In April 2013, Edge's management opened Mirabaud Bank Account #509951 (the "Mirabaud Account") in the name of Edge.  Cmplt. ¶¶ 100.  On April 16, 2013, $80 million in commingled funds was transferred from the Edge BCB account to the Mirabaud Account, of which $33.9 million was allegedly traceable to proceeds from the Reynolds & Reynolds debt refinancing or interest.  Cmplt. ¶¶ 106, 110.  On November 17, 2014, $45 million, representing $15 million traceable to proceeds from the Reynolds & Reynolds debt refinancing and $30 million involved in the SumTotal investment, was transferred from the Edge BCB account to the Mirabaud Account.  Cmplt. ¶¶ 107, 110-111.

In October 2018, the Mirabaud Account had a balance of $125 million. Cmplt. ¶ 108. In June 2019, the Mirabaud Account had a balance of $129 million. Cmplt. ¶ 108. On October 27, 2020, the government obtained a seizure warrant for the $77.9 million in Defendant Funds. Cmplt. ¶ 112.

The Complaint alleges four counts of forfeiture against Defendant Funds pursuant to 18 U.S.C. § 981(a)(1): two counts alleging that Defendant Funds constitute property involved in violations of 18 U.S.C. §§ 1956 & 1957 (money laundering), and two counts alleging that Defendant Funds constitute or were derived from proceeds traceable to violations of 18 U.S.C. §§ 1343 (wire fraud) and 1344 (bank fraud). Cmplt. ¶¶ 123-130.

## PLEADING STANDARD

Independent of the familiar *Iqbal/Twombley* pleading requirements, because of the severe nature of pre-adjudication seizures, Rule G imposes a heightened pleading burden on the government in civil forfeiture actions. *See United States v. Funds in the Amount of $33,534.93 Account Number Ending \*\*8429,* CIV No. 11-675 LH/KBM, 2013 WL 12333983, *3 (D. N.M. Mar. 25, 2013) (Rule G is a higher standard than the general pleading requirements found at Rule 8(a)(2) . . ."); *U.S. v. $3,294.00 in U.S. Currency,* No. 2:05-CV-00998-PGC, 2006 WL 1982852, *2 (D. Utah July 13, 2006) ("Civil *in rem* forfeiture claims are governed by the Supplemental Rules for Certain Admiralty and Maritime Claims, . . . which require a heightened standard of pleading."). To satisfy Rule G's pleading requirements, a civil forfeiture complaint must "state ***sufficiently detailed facts*** to support a reasonable belief that the Government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f) (emphasis added).

"The requirements set forth in the Supplemental Rules must be strictly enforced." *United States v. Real Property: 607 Maryland Avenue, Alamogordo, New Mexico,* No. CIV 13-0155

RB/LAM, 2013 WL 12328811, at *1 (D.N.M. 2013) (internal quotation marks and citation omitted); *see also U.S. v. One Parcel of Real Property,* 964 F.2d 1244, 1248 (1st Cir. 1992) ("The stringent pleading rules applicable in the forfeiture context mirror the drastic nature of the remedy. . . Because Congress has supplied the government with one of the most potent weapons in the judicial armamentarium, the courts must make certain that the government is, at the very least, reasonably precise in its deployment.") (citations omitted).

The Complaint here fails to plead facts sufficiently tracing the frozen Defendant Funds to proscribed activity. In fact, it fails to state a Section 981 claim under either Rule G's heightened pleading standard requiring "sufficiently detailed facts"—or even under the typical *Iqbal/Twombley* "plausibility" pleading standard used in other civil proceedings. Therefore, the government's failure to meet its pleading obligations mandates dismissal as against Defendant Funds.

**ARGUMENT**

1.  **The Government Fails to Plead Facts Tracing the Seized Property to the Proceeds of Proscribed Conduct.**

The complaint as pled contains a fatal defect: rather than alleging detailed facts as required by the heightened pleading standard, the Complaint instead asks this Court simply to *assume* that the Defendant Funds frozen in the Mirabaud Account in 2020 are the same or traceable to the monies deposited six years earlier in April 2013 and November 2014 (the "2013/14 deposits"). Except for their being in the same Mirabaud Account six years apart, the government does not allege any fact whatsoever – let alone "sufficiently detailed facts" – connecting the 2013/14 deposits of alleged proceeds to the funds frozen in October 2020. Rather, the Complaint leaves it to the reader's imagination what happened to the deposits and to the Mirabaud account in those six years. Given this gap, there is nothing to support a reasonable

5

belief that the government will be able to show by a preponderance of the evidence at trial that Defendant Funds themselves are traceable to the alleged criminal activity. Because the Court can only speculate that it might be so, the Complaint must be dismissed as against Defendant Funds. *See United States v. One Partially Assembled Drag Racer,* 899 F. Supp. 1334, 1341 (D.N.J. 1995) (finding inadequate complaint that alleged predicate violations of customs laws and Controlled Substances Act with sufficient particularity, but gave no indication government would be able to trace proceeds of claimant's alleged criminal activity to purchase of property seized).

To forfeit property under Section 981, the government must show that the seized property itself "was ***involved in*** the stated violations or be ***traceable to*** such property." *United States v. Any and All Ownership Interest Held in the Name, On Behalf or For the Benefit of Joseph Taub (Taub"),* Civil Action No. 16-9158 (JMV)(JBC), 2020 WL 278762, *9 (D.N.J. Jan. 16, 2020) (emphasis added); *United States v. Contents in Account No. 059-644190-69 ("Contents"),* 253 F. Supp. 2d 789, 792 (D. Vt. 2003) ("When the government seizes property under § 981, it must prove that the property is itself involved in, or is traceable to property involved in, a proscribed transaction."); *U.S. v. $8,221,877.16 in U.S. Currency,* 330 F.3d 141, 158 (3rd Cir. 2003) ("In forfeitures under section 981, the government is required to trace the seized property directly to the offense giving rise to the forfeiture.").[2]

Thus, "the plain language of the relevant provisions indicates that the stated nexus – involved in, traceable to, and proceeds – is an element of the civil forfeiture claims," and "the

---

[2] *See also* 18 U.S.C. § 981(a)(1) (subjecting to forfeiture "(A) any property . . . *involved in* a transaction or attempted transaction in violation of section 1956 [or] 1957 . . . of this title, or any property *traceable to* such property. . . . [or] (C) [a]ny property . . . which constitutes or is derived from proceeds *traceable to* a violation of section . . .1344 of this title or any offense constituting 'specified unlawful activity' . . . .") (emphasis added)

Government must at a minimum allege a plausible connection between the underlying offenses and the relevant property . . ." *Taub,* 2020 WL 278762, at *9 & *11. Where the government seeks to forfeit the proceeds of criminal activity, the "government bears a burden of pleading a connection between the seized property and the predicate acts at the complaint stage." *Drag Racer,* 899 F. Supp. at 1341; *U.S. v. Pole No. 3172, Hopkinton,* 852 F.2d 636, 640 (1st Cir. 1988) ("[A]t the pleadings stage, the government must allege facts from which one could infer that the payments claimed to be proceeds actually were tainted."). Here, the Complaint lacks any factual allegation whatsoever, even if taken as true, to connect the seized property, that is, the Defendant Funds frozen in the Mirabaud Account in 2020, to the alleged proceeds of predicate acts deposited in 2013/14.

Six years passed between the 2013/14 deposits and the freezing of the Defendant Funds in 2020. The Complaint's sole allegation as to what happened during those six years is that the funds "continued to be invested in general interest-earning investment vehicles." Cmplt. ¶ 109. That single, vague, general assertion does not rise above the speculative level, much less satisfy Rule G's heightened pleading standard requiring "sufficiently detailed facts." *See Drag Racer,* 899 F. Supp. at 1341 (finding allegations that claimant "earned huge sums of money" by illegally distributing controlled substances and conclusory statements that claimant used proceeds from these sales to purchase various components of property seized, "too vague to pass muster" under Supplemental Rules heightened pleading standard); *Taub,* 2020 WL 278762, at *11 (finding that conclusory allegations that "an analysis" demonstrated that 91.2% of the trading activity in the accounts in which proscribed acts occurred consisted of proscribed acts and an attached "exhibit" purportedly showing the amount of profits generated in accounts used for proscribed activities were conclusory and did not support a plausibility finding for all of the seized property);

*Contents*, 253 F. Supp. at 798 ("A bald assertion that an additional $535,000 in Accounts Nos. 1 & 2 is directly traceable to [alleged criminal organization], without a more fulsome description of the transactions involved, cannot create probable cause that these funds are, in fact, traceable to [alleged criminal organization]."); *United States v. $39,000 in Canadian Currency,* 801 F.2d 1210, 1221-22 (10th Cir. 1986) (dismissing complaint where allegations provided only "an intimation" that vehicle owner and drug dealer shared joint income, but failed to supply factual basis for reasonable inference that property was subject to forfeiture).

The Complaint refers to the October 1, 2020 indictment of Robert Brockman ("Indictment"), presumably to bolster its allegations that offenses were committed. *See United States v. Robert T. Brockman*, Case 3:20-cr-00371-WHA, Indictment (Dkt. #1), ¶¶ 113-114.[3] The Indictment, however, contains no allegations regarding Defendant Funds, much less tracing Defendant Funds from the alleged offenses to Edge's Mirabaud account. Rather, the Indictment purports to trace the alleged proceeds of the Reynolds & Reynolds debt refinancing from Edge's BCB account to the accounts of other entities at Bank of America and First Republic Bank in the United States and an *entirely different* account at Mirabaud Bank, owned by Point Investments, Ltd., not Edge. *See* Indictment ¶¶ 191(d)-(h) (for example, describing profits and proceeds from SumTotal investment being paid "to **Point's account** at Mirabaud Bank in Switzerland, account ***463" (emphasis added)). The Indictment therefore lacks factual allegations supporting a reasonable belief that the government in this civil forfeiture action will be able to meet its burden of proof tracing the Defendant Funds—held in Edge account #509951—to the alleged offenses.

---

[3] The Indictment was dismissed on September 7, 2022, after Robert Brockman passed away on August 5, 2022. *See United States v. Robert T. Brockman*, Case 3:20-cr-00371-WHA, Order Granting Motion to Dismiss Indictment (Dkt. #290).

Far from bolstering the civil forfeiture Complaint, the Indictment in fact materially *contradicts* the Complaint.

The Complaint does not allege that the 2013/14 deposits stayed in the Mirabaud Account over the course of six years. It does not allege that the balance in the Mirabaud Account remained above $77.9 million, or even that it did not zero out, for the entire six years. It does not allege that there were no withdrawals or additional deposits of innocent funds. It does not allege that Edge had no other sources of income deposited in the Mirabaud account. What happened in the Mirabaud Account over the six years between 2013/14 and 2020 is left to sheer speculation. Because it fails to plead sufficiently detailed facts tracing Defendant Funds to the proscribed conduct, the Complaint must be dismissed. *See Pole No. 3172,* 852 F.2d at 641 (ruling that district court "must insist" and "force[]" the government "to clearly articulate in its complaint the facts on which the seizure was premised" and remanding for further proceedings); *Taub,* 2020 WL 278762, *11-*12 (granting claimant's motion to dismiss complaint because it "fails to plausibly allege a sufficient connection between the underlying criminal activity and the seized property" or "that all such proceeds were involved in money laundering or traceable to money laundering."); *United States v. $38,000 in United States Currency,* 816 F.2d 1538, 1548-49 (11th Cir. 1987) (dismissing complaint that contained "not even a whiff of evidence to suggest that the currency is any way linked to" unlawful conduct).

**2.     Rule G's "Sufficiently Detailed Facts" Pleading Standard Must Be Strictly Enforced to Constitutionally Contain a Drastic Remedy.**

The government's failure to plead the connection between the Defendant Funds and the alleged proceeds of criminal activity cannot be glossed over. Traceability in civil forfeiture actions involving fungible property like money is an "important question – sometimes the only question – because identifying the particular funds traceable to the criminal violation is nearly

9

impossible." *United States v. Sixty-One Thousand Nine Hundred Dollars and No Cents ("Sixty-One Thousand"),* 10 Civ. 1866 (BMC), 2010 WL 11623206, *3 (E.D.N.Y. Sept. 8, 2010) (citation omitted); *$8,221,877.16,* 330 F.3d at 158 (recognizing that tracing seized property directly to the offense "can prove difficult when the underlying property is funds that can be deposited in a back account, withdrawn, and replaced with new, untainted funds, or may be commingled with untainted funds within one account.").

Proper pleading of the seized property's traceability to criminal acts serves a compelling purpose. "If the law required anything less, the government could hold property for long periods of time based on allegations without sufficient factual basis." *Drag Racer,* 899 F. Supp. at 1340 (internal quotation and citation omitted). As the *Drag Racer* court explained:

> Civil forfeiture is a powerful tool in the government's battle against crime, and its use is circumscribed by important Fourth and Fifth Amendment rights. It must be carried out scrupulously within constitutional bounds. Accordingly, the requirements of Rule E(2)(a) [Rule G(2)(f)'s predecessor] are more than a mere technicality; they are a means of upholding this drastic remedy against a possible due process challenge and of preventing the seizure of the defendant property for long periods of time when, in fact, the government had no claim to the property.

*Id.* at 1340; *One Parcel of Real Property,* 964 F.2d at 1248 (finding that "[t]he exacting particularity standard applicable to forfeiture actions is . . . a significant legal rule designed to curb excesses of government power and afford property owners some protection from forfeiture's attendant sanctions. . . In sum, since forfeitures are strong medicine, disfavored in our jurisprudence, it seems fitting to condition the medicine's availability on a proper regard for the requirements of the law.") (citations omitted).

### 3. Other Forfeiture Provisions Make Clear the Importance of Tracing to Civil Forfeiture Under Section 981.

The government here proceeds only under Section 981, which requires the government to show that property was involved in a criminal transaction or traceable thereto. *See* 18 U.S.C. §

981(a)(1) (subjecting to forfeiture "(A) any property . . . *involved in* a transaction or attempted transaction in violation of section 1956 [or] 1957 . . . of this title, or any property *traceable to* such property. . . . [or] (C) [a]ny property . . . which constitutes or is derived from proceeds *traceable to* a violation of section . . .1344 of this title or any offense constituting 'specified unlawful activity' . . . .") (emphasis added). Numerous courts have recognized that Section 981's tracing requirement poses a high burden on the government in tracing money or other fungible property. *See, e.g., Contents,* 253 F. Supp. at 798. "Once money is deposited into a bank account, the government cannot trace the physical currency. Furthermore, how can the government trace fungible property, like money, back to proscribed conduct once it has been commingled with other fungible property?" *Id*.

Precisely because of this difficulty, Congress has provided ***other*** forfeiture provisions available to the government with lessened tracing requirements—but with other limitations that preclude their use here. *First,* 18 U.S.C. § 982's substitute asset provision—which would permit forfeiture without tracing—only applies to ***criminal***, not civil, forfeiture actions—and is therefore not available here. *See* 18 U.S.C. § 982(b); 21 U.S.C. § 853(p); 28 U.S.C. § 2461(c). Unlike Section 982, under Section 981 the fact that money is fungible does not give the government here leave to grab other funds found in the place where tainted money was kept. *See Drag Racer,* 899 F. Supp. at 1341 ("At the forfeiture proceeding, showing the connection between the property and the predicate criminal acts can be a substantial task. . . Likewise, the government bears a burden of pleading a connection between the seized property and the predicate acts at the complaint stage."). Proceeding under Section 981, the government may not seize Defendant Funds in 2020 simply because they are found in the same account where allegedly tainted property was deposited in 2013/14.

11

*Second,* because of the difficulty involved in tracing fungible property to proscribed conduct in civil forfeiture proceedings, Congress enacted 18 U.S.C. § 984 to provide an alternative—but with a catch. "Section 984 gave the government a broad, new power to seize fungible property ***without regard to its traceability to proscribed conduct***, but simultaneously imposed a ***one-year, instead of five-year limitations period***." *Id.* at 793 (emphasis added).

Where, as here, the government cannot allege facts tracing fungible property directly to the offense, the solution is not to ease due process protections to allow improper use of a drastic remedy. Rather, the government must proceed under Section 984—or not proceed at all. *See Sixty-One Thousand,* 2010 WL 11623206, at *4 (noting that where money "is not directly traceable to the offense . . . [the government] must employ § 984"); *United States v. Currency, $300,000 Seized from Bryant Bank Account,* Civil No. 2:12-cv-2431-AKK, 2013 WL 1498972, *3 (N.D. Ala. Apr. 9, 2013) (finding where claimant withdrew actual funds involved in or traceable to the offense, "when the Government seized from that account the identical amount of funds involved in the offense, it did so in accordance with Section 984[]"); *$8,221,877.16,* 330 F.3d at 161 (holding that, in order to forfeit property that is not directly traceable to the offense, the government must file a complaint within one year of the date of the offense under Section 984).

The problem for the government here is that Section 984's one-year statute of limitations would bar the forfeiture action. The alleged offenses were committed between 2009-2014, Cmplt. ¶¶ 38-60, 92-97, but the Complaint was not filed until 2021. But the government's statute of limitations problem does not free it to bypass Section 981's tracing requirement. The government tries to have its cake and eat it too, proceeding with the benefit of Section 981's

longer statute of limitations but without the sufficiently detailed tracing allegations that provision requires.

To assert a claim under Section 981, the government must allege facts tracing the Defendant Funds seized in 2020 to the proceeds of allegedly proscribed activity. That it fails to do. Absent such allegations, the Complaint fails to state a claim and must be dismissed. *See $8,221,877.16,* 330 F.3d at 161 (noting that motion to dismiss will succeed "if the government cannot fulfill the tracing requirement under section 981, such that it needs to resort to section 984.").

## CONCLUSION

For all of the foregoing reasons, the Complaint should be dismissed as against Defendant Funds, the Defendant Funds should be released from seizure, and the government should be ordered to request that the Swiss authorities vacate their restraining order.

Respectfully submitted,

**AEGIS LAW GROUP LLP**

By: */s/ Branden Lewiston*
Branden Lewiston
801 Pennsylvania Ave, NW, Suite 740
Washington, DC 20004
Tel: (202) 737-3500
Fax: (202) 735-5070
blewiston@aegislawgroup.com

*Counsel for Claimant
Edge Capital Investments, Ltd.*

**CERTIFICATE OF SERVICE**

  I hereby certify that on January 6, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice to all counsel of record.

              */s/ Branden Lewiston*