IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-00796-MEH

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. 121 ASH ROAD, BASALT, COLORADO,
2. APPROXIMATELY $77,888,782.61 HELD AND FROZEN IN MIRABAUD BANK ACCOUNT #509951,

Defendants,

and

EDGE CAPITAL INVESTMENTS, LTD.,

Claimant.

---

**UNITED STATES' RESPONSE TO CLAIMANT EDGE CAPITAL INVESTMENTS, LTD.'S MOTION TO DISMISS VERIFIED COMPLAINT (ECF Doc. 54)**

---

COMES NOW the United States of America (the "United States"), by and through United States Attorney Cole Finegan, Assistant United States Attorney Tonya Andrews, and Assistant United States Attorney Laura B. Hurd, and respectfully responds to Claimant Edge Capital Investments, Ltd.'s ("Edge") Motion to Dismiss Verified Complaint (ECF Doc. 54). The United States sets forth the following:

**PROCEDURAL FACTS**

1.      On October 1, 2020, a grand jury returned an indictment charging Robert T. Brockman with violations of 18 U.S.C. § 371 (Conspiracy to Defraud the United States and Commit Tax Evasion), 26 U.S.C. § 7201 (Tax Evasion), 31 U.S.C. §§ 5314 and 5322(b) (FBAR

1

Violations), 18 U.S.C. § 1343 (Wire Fraud Affecting a Financial Institution), 18 U.S.C. § 1956(a)(1)(B)(i) (Concealment Money Laundering), 18 U.S.C. § 1956(a)(1)(A)(ii) (Tax Evasion Money Laundering), 18 U.S.C. § 1956(a)(2)(B)(i) (International Concealment Money Laundering), 18 U.S.C. § 1512(b)(2)(B) (Evidence Tampering), and 18 U.S.C. § 1512(c)(1) (Destruction of Evidence). *See United States v. Brockman*, 4:21-cr-00009-1 (S.D. Tex. 2021) (ECF Doc. 2). In part, the indictment alleges that Brockman engaged in a long-term conspiracy in which he used a complex network of offshore entities, nominees, and secret foreign bank accounts to conceal income he earned through fraudulent activity, the proceeds of which were used to make improvements to defendant 121 Ash Road property and to fund the defendant Mirabaud bank account.

2.       On March 18, 2021, pursuant to the civil forfeiture provisions of 18 U.S.C. §§ 981(a)(1)(A) and (C), the United States filed a Verified Complaint for Forfeiture *In Rem*, alleging the above-captioned defendant assets are subject to forfeiture based on violations of 18 U.S.C. §§ 1956, 1957, 1343, and 1344. (ECF Doc. 1).

3.       Edge filed its Verified Claim with respect to Defendant Approximately $77,888,782.61 Held and Frozen in Mirabaud Bank Account #509951 ("Defendant Funds") on April 15, 2021. (ECF Doc. 5).

4.       On September 7, 2022, Mr. Brockman's death certificate was filed in his criminal case. *See* Doc. 289, Exhibit A, *United States v. Brockman*, 4:21-cr-00009-1 (S.D. Tex. 2021). On September 7, 2022, the Indictment was dismissed based on his death. *See* Doc. 290, *United States v. Brockman*, 4:21-cr-00009-1 (S.D. Tex. 2021). On September 30, 2022, the United States filed Notice of Mr. Brockman's death. (ECF Doc. 47.)

5.      After various requests to extend the deadline for Edge's responsive pleading, spanning over a twenty-month period, on January 6, 2023, Edge filed a Motion to Dismiss the Verified Complaint.  (ECF Doc. 54).

<u>OVERVIEW OF LEGAL ARGUMENT</u>

Edge's Motion to Dismiss does not dispute that the government has sufficiently pled the underlying criminal conduct.  The motion does not dispute that the Complaint sufficiently traced the 2013/2014 deposits to that criminal conduct.  Rather, the motion disputes only the traceability of the 2013/2014 deposits to the funds frozen in 2020.  Despite Edge's argument, the government's Verified Complaint provides Edge with "enough facts so that the claimant may understand the theory of forfeiture, file a responsive pleading, and undertake an adequate investigation." *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013); *accord United States v. 17 Bank Accts. Containing Various Amounts of United States Currency*, No. 18-CV-189-ABJ, 2019 WL 13225956, at *11 (D. Wyo. Apr. 9, 2019). Accordingly, Edge's motion should be denied.  In the alternative, the government respectfully requests leave to amend the Complaint.

I.      <u>LEGAL ANALYSIS</u>

   a.  **Civil Forfeiture Complaint Pleading Standard**

This is an action for civil forfeiture *in rem* arising from a federal statute and is, therefore, governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule G").  Fed. R. Civ. P. Supp. R. G(1).  A claimant with standing may move to dismiss the forfeiture action under Fed. R. Civ. P. 12(b).  Fed. R. Civ. P. Supp. R. G(8)(b)(i).  Claimant Edge seeks relief under Rule 12(b)(6), which allows a party to move to dismiss for "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion, a complaint ordinarily "must contain enough allegations of fact to 'state a claim for relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Supplemental Rule G, however, imposes a pleading standard that requires the complaint to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f); *United States v. $64,480.00 in United States Currency*, No. 18-1166-JWB, 2019 WL 2327532, at *1 (D. Kan. May 31, 2019). "The sufficiency of the forfeiture complaint is governed by Supplemental Rule G(2)." Fed. R. Civ. P. Supp. R. G(8)(b)(ii).

Importantly, at the pleadings stage the government does not need to prove the forfeitability of the property by a preponderance of the evidence under Supplemental Rule G(2)(f). *United States v. Real Property Known as 223 Spring Water Ln*., No. 6:18-CV-315-REW, 2021 WL 144245, at *2 (E.D. Ky. Jan. 15, 2021). The complaint must only provide "reasonably detailed facts that, if accepted as true, support a reasonable belief that the United States, after the completion of the discovery process, could demonstrate by a preponderance of the evidence that the property is tainted and subject to forfeiture." *Id. (*citing *United States v. 12 Parcels of Real Prop. Located in Carlisle Nicholas Cty., Kentucky*, No. 16-CV-43-JMH, 2017 WL 4369485, at *2 (E.D. Ky. Oct. 2, 2017) (collecting cases)).

For the purposes of analyzing the Complaint under Rule 12(b)(6), the court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotations and citation omitted); *United States v. $5,690.00 In U.S. Currency*, No. CIV

07CV01148CMAKMT, 2008 WL 4830933, at *3 (D. Colo. Nov. 4, 2008).  A court should

dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claims

that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true

and construing them in the light most favorable to the plaintiff."  *Dubbs*, 336 F.3d at 1201

(internal quotations and citation omitted); *United States v. 904 Toro Canyon Rd., Santa Barbara,

Cal.*, No. CIVA04CV02549EWN-OES, 2006 WL 36764, at *3 (D. Colo. Jan. 5, 2006).  To do

this, the Court should analyze the Complaint using a totality of the circumstances approach.

*United States v. Funds in the Amount of $33,534.93 Acct. No. Ending **8429 From Bank of Am.*,

No. CIV 11-675 LH/KBM, 2013 WL 12333983, at *6 (D.N.M. Mar. 25, 2013) ("the totality of

the facts alleged are sufficiently detailed to apprise Claimant of the basis for the forfeiture action,

allowing [Claimant] to respond by contesting the source of these Funds.").

Nonetheless, in civil forfeiture cases, "[n]o [forfeiture] complaint may be dismissed on

the ground that the Government did not have adequate evidence at the time the complaint was

filed to establish the forfeitability of the property."  18 U.S.C. § 983(a)(3)(D); Fed. R. Civ. P.

Supp. R. G(8)(b)(ii).  "[T]he Government may use evidence gathered *after* the filing of the

complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject

to forfeiture."  18 U.S.C. § 983(c)(2) (emphasis added).  Thus, in the face of a Rule 12(b)(6)

challenge, 18 U.S.C. § 983(c) makes it clear that the government need not provide "all the facts

that would allow the Government to ultimately succeed in the forfeiture proceeding."  *United

States v. 630 Ardmore Drive, City of Durham, Parkwood Twp., Durham Cnty., N. Carolina*, 178

F. Supp. 2d 572, 581 (M.D.N.C. 2001).

Accordingly, "[a]t the pleading stage, it suffices for the government to simply allege

enough facts so that the claimant may understand the theory of forfeiture, file a responsive

pleading, and undertake an adequate investigation." *One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d at 14 (citing *United States v. Mondragon,* 313 F.3d 862, 864-865 (4th Cir. 2002)); *see also United States v. Aguilar*, 782 F.3d 1101, 1109 (9th Cir. 2015); *United States v. $506,069.09 Seized From First Merit Bank*, 664 F. App'x 422, 434 (6th Cir. 2016); *17 Bank Accounts Containing Various Amount of United States Currency Identified in Exhibit A*, 2019 WL 13226258, at *11.

For the reasons discussed below, the United States' Complaint meets the pleading requirements of Supplemental Rule G(2)(f) and Claimant is not entitled to the relief it seeks.

### b. Statutory Requirements

The United States' Complaint alleges that defendant approximately $77,888,782.61 held and frozen in Mirabaud account #509951 is forfeitable under 18 U.S.C. § 981(a)(1)(C) as proceeds traceable to Wire Fraud and/or Bank Fraud (18 U.S.C. §§ 1343, 1344) and forfeitable under 18 U.S.C. § 981(a)(1)(A) as property involved in Money Laundering (18 U.S.C. § 1956 and/or 1957).  (ECF Doc. 1 at ¶¶123-130).   These claims are separate and distinct.

Under 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of [18 U.S.C. §§ 1343, 1344]. . ." is subject to forfeiture.  Because money is fungible, the government is permitted to use tracing principles to determine tainted and non-tainted funds.  *See Luis v. United States*, 578 U.S. 5, 22-23 (2016) (noting that "money is fungible; and sometimes it will be difficult to say whether a particular bank account contains tainted or untainted funds.  But the law has tracing rules that help courts implement the kind of distinction [required]."); *In re Moffitt, Zwerling & Kemler, P.C.*, 875 F.Supp. 1152, 1159-60 (E.D. Va. 1995) ("[W]hen tracing commingled funds, the government is accorded flexibility to choose among various accounting approaches."), *aff'd in part, rev'd on*

*other grounds sub nom. United States v. Moffitt, Zwerling & Kemler, P.C.,* 83 F.3d 660 (4th Cir. 1996); *United States v. Lowrance*, No. 00-CV-236-K(M), 2003 WL 22327850, at \*2-3 (N.D. Okla. Aug. 28, 2003) (noting four methods for tracing comingled funds and the government is afforded flexibility in choosing its accounting methodology).

Under 18 U.S.C. § 981(a)(1)(A), "[a]ny property . . . involved in a transaction . . . in violation of section 1956, 1957, or 1960 of [Title 18] or any property traceable to such property is subject to forfeiture." Property "involved in" an offense is defined broadly, and "include[s] the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and *any property used to facilitate the laundering offense*." *United States v. Bornfield*, 145 F.3d 1123, 1135 (10th Cir. 1998) (citing *United States v. Tencer*, 107 F.3d 1120, 1134 (5th Cir. 1997)) (emphasis and quotations in *Tencer*)). In turn, facilitation is defined as "mak[ing] the prohibited conduct less difficult or more or less free from obstruction or hinderance." *Id.* (quotations and citations omitted). In the Tenth Circuit, forfeiture of both "legitimate and illegitimate funds commingled in an account is proper as long as the government demonstrates that the defendant pooled the funds to facilitate [the money laundering transaction]."[1] *Id.* Thus, both proceeds of the specified unlawful activities as well as untainted funds may be forfeited as property involved in money laundering under Section 981(a)(1)(A).

---

[1] The Government may use any of the prongs of 18 U.S.C. § 1956 or a substantive violation of § 1957 to prove forfeitability. Under Section 1956, this includes proving by a preponderance of the evidence that the transaction or attempted transaction is done with the intent to promote the carrying on of a specified unlawful activity; with the intent to engage in conduct constitution a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or to avoid a transaction reporting requirement under State or Federal law, or conspiracy to commit any of the aforementioned. 18 U.S.C. § 1956(a)(1)(A)-(B).

### c.  The Complaint is Sufficiently Plead

Despite Edge's argument to the contrary, the government's Complaint meets the Supplemental Rule G(2) requirements by alleging sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.  The government has not merely stated in a conclusory fashion that the defendant funds were connected to criminal activity, but rather, has set forth factual allegations articulating the fraud scheme and subsequent movement of funds to the defendant Mirabaud account.  Based on these detailed allegations, Edge can conduct a meaningful investigation of the facts and draft a responsive pleading.  *See* (ECF Doc. 1 at ¶¶96-112); *One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d at 14.

Edge's main argument is that the Complaint insufficiently traces the defendant funds between their 2013/2014 deposits to the funds frozen in 2020.  However, the level of specificity regarding the tracing of those funds is more than sufficient at this juncture.  The pleading standard for tracing funds in a civil forfeiture complaint is not exacting.  *United States v. All Assets Held In Acct. No. XXXXXXXX*, 83 F. Supp. 3d 360, 379 (D.D.C. 2015) (noting that "the Government is not required to demonstrate full tracing of all account activity to prove money laundering"); *see also United States v. Approximately $25,829,681.80 in Funds*, No. 98 Civ. 2682 (LMM), 1999 WL 1080370, at *7 (S.D.N.Y. Nov. 30, 1999) (holding that, as long as the government alleges "specific facts supporting an inference that the funds are traceable to wire fraud and mail fraud, it has met its burden" at the pleadings stage).  Given the reasonable inferences drawn in the government's favor, and under the totality of the circumstances, the Complaint adequately alleges that the defendant funds are located in the account.  More specifically, the allegations are outlined in the following paragraphs:

- A review of Edge Capital Investments, Ltd.'s Bermuda Commercial Bank account number 0680120070301 identified a wire transfer on April 16, 2013 of $80 million in commingled funds to Edge Capital Investments, Ltd.'s Mirabaud Bank account #509951.  Prior to this transfer, Edge Capital Investments, Ltd's Bermuda Commercial account retained deposits traceable to Reynolds & Reynolds buyback proceeds ($2,563,588.04) since their initial deposit, received deposits, totaling $30,048,864.33, from investments of Reynolds & Reynolds debt buyback proceeds in a fixed deposit instrument; received bank interest, totaling $24,760.02; and SumTotal Debt interest payments, totaling $1,231,825.34. Accordingly, approximately $33,869,037.73 of this wire transfer is directly traceable to the wire fraud proceeds received from the Reynolds & Reynolds debt buyback scheme, or proceeds traceable to the original fraud proceeds, including bank interest and fixed deposit interest.  (ECF Doc. 1 at ¶106).[2]

- As described above, on November 17, 2014, Tamine wire transferred $45 million from Edge Capital Investments, Ltd.'s account at Bermuda Commercial Bank to Edge Capital Investments, Ltd.'s Mirabaud account #509951 in Switzerland. These funds represented funds from Edge Capital Investments, Ltd.'s sale of the SumTotal first and second lien debt investment, which included $15 million in proceeds traceable to Reynolds & Reynolds debt buyback scheme and $30 million of funds traceable to and involved in money laundering. *Id*. at ¶107.

- According to Tamine, as of the date of his initial cooperation in this case in October of 2018, over $125 million sourced to Edge Capital Investments, Ltd. was sitting in the Mirabaud Bank account in Switzerland.  Tamine provided documents showing that as of June 29, 2019, there was over $129 million in the Edge Capital Investments, Ltd.'s Mirabaud Bank account.  *Id*. at ¶108.

- Based on a review of records, since these initial transfers from Edge Capital's account at Bermuda Commercial Bank to Edge Capital Investments, Ltd.'s Mirabaud Bank account #509951, these funds have continued to be invested in general interest-earning investment vehicles.  *Id*. at ¶109.

These facts are sufficient to allow Edge to "understand the theory of forfeiture, file a responsive pleading, and undertake an adequate investigation." *17 Bank Accounts Containing Various Amount of United States Currency Identified in Exhibit A*, 2019 WL 13226258, at *11. Therefore, accepting all the allegations in the Complaint as true, and construing them in the light most favorable to the government, there are sufficiently detailed facts to establish the United

---

[2] Tracing of the individual amounts identified in paragraphs 106-107 to the fraud scheme is also alleged under the section titled Financial Analysis of Fraud Proceeds in the Complaint beginning on page 21.

States will be able to, after discovery, prove that the subject funds are proceeds traceable to 18 U.S.C. §§ 1343, 1344, and 18 U.S.C. §§ 1956 and 1957, or conspiracy to commit the same.

> ### d. The Applicable Forfeiture Theories Support a Reasonable Basis to Believe Subject Funds are Subject to Forfeiture

Although Edge argues that the government did not sufficiently plead traceability in the Mirabaud account from the initial 2013/2014 deposits to 2020, Edge's argument is unconvincing based on the factual allegations in the Complaint, as well as the relevant law governing traceability and property involved in money laundering.

> ### i. Traceability

The issue of traceability of the tainted funds to the Mirabaud account, which is the crux of Edge's argument in its Motion to Dismiss, is an issue of fact for trial. *See Medina-Rodriguez v. $3,072,266.59 in United States Currency*, 471 F. Supp. 3d 465, 481 (D.P.R. 2020) (citing *United States v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Account*, 255 F. Supp. 2d 56, 68 (E.D.N.Y. 2003)) ("[T]he court need not pass on the government's ultimate burden of proof regarding traceability."). Nonetheless, the tracing of the tainted funds to the defendant account is sufficiently alleged. Edge's primary argument that "what happened in the Mirabaud Account over the six years between 2013/14 and 2020 is left to sheer speculation," is simply inaccurate given that Tamine confirmed Edge Capital Investments' money was in the account in 2018 and the government alleged reinvestment of the fraud funds in that account. *See* (ECF Doc. 1 at ¶¶108-109). Moreover, every single transaction that occurred in the account is also known to Edge through its own bank records,[3] or will be through subsequent discovery. But, as stated above, the issue before the Court at this stage is one of pleading, and "it is not necessary to pass

---

[3] Edge's director, Evatt Tamine, is the sole signatory on Edge's Mirabaud account where the subject funds are held. Indeed, counsel for Edge arranged for the movement of non-seized funds from the Mirabaud account to Lichtenstein after the seizure of the subject funds.

on the government's ultimate burden of proof regarding traceability of the defendants-in-rem"

when deciding a Motion to Dismiss.  *All Assets Held In Acct. No. XXXXXXXX*, 83 F. Supp. 3d at

379 (citing *United States v. All Funds*, No. CV–05–3971(SJF), 2007 WL 2114670, at *7

(E.D.N.Y. July 16, 2007)) (internal quotation marks omitted); *accord Medina-Rodriguez*, 471 F.

Supp. 3d at 481.

      Edge also argues that the Complaint did not articulate whether the account was zeroed

out, or whether additional legitimate funds or withdrawals occurred in the account.  *See* (ECF

Doc. 54 at p. 9).  This misconstrues the government's tracing requirement and Edge's ability to

challenge the forfeitability of the property at the pleading stage.  *See All Funds on Deposit in*

*Dime Sav. Bank of Williamsburg Account*, 255 F. Supp. 2d at 68-69 (rejecting claimant's

argument that the government did not adequately allege facts of traceability when the subject

account undisputedly contained both legitimate and criminally fraudulently funds, as facts

supported an inference that the property was subject to forfeiture).

      To begin with, the forfeiture statutes include traceable proceeds (derived from or

involved in) and ***property traceable*** to such property.  *See* 18 U.S.C. §§ 981(a)(1)(A), (a)(1)(C).

(emphasis added).  This means that if tainted funds were invested in general interest-earning

investment vehicles and then returned to the account, the funds are property traceable thereto—

i.e., to the original tainted monies.  *See United States v Afriyie*, 929 F.3d 63, 73 (2d Cir. 2019)

(18 U.S.C. § 981(a)(1)(C)'s plain text provides for forfeiture of any property constituting or

derived from proceeds traceable to criminal offenses so appreciation gained on funds obtained

from insider trading is also subject to forfeiture); *United States v. Swanson*, 394 F.3d 520, 529

n.4 (7th Cir. 2005) (a change in the form of the proceeds does not prevent forfeiture; property

traceable to the forfeitable property is forfeitable as well).  In short, when Edge continued to

reinvest the money laundering and fraud scheme proceeds, their reinvestment did not change their nature or the government's ability to forfeit them.  This is true, even if the invested funds were profitable and appreciated in value.  *Id*.; *see also United States v. $43,920.00*, No. 08-00649-CV-W-FJG, 2010 WL 1486005, *3 (W.D. Mo. Apr. 14, 2010) (if defendant uses his fraud proceeds to gamble, any gambling winnings are traceable to the fraud proceeds).  Edge's argument appears to rely on the inability to forfeit funds in an account when the proceeds are completely or partially dissipated and not returned to the account.  (ECF Doc. 54 at p.9).  This not the case here, as the government's allegation clearly states that the tainted funds in the account continued to be invested in interest-earning vehicles.  (ECF Doc. 1 at ¶109).

In addition, the argument regarding the lack of facts informing Edge of legitimate sources of income deposited into the account is similarly irrelevant.  Any additional funds deposited into the account does not negate the presence of fraud proceeds or property involved in money laundering in the Mirabaud account.  Indeed, as Edge is aware, there were other funds present in the account at the time of the Complaint, which were not identified as being subject to forfeiture.  Put simply, the government was not required to allege traceability in the very narrowly tailored manner that Edge asserts; rather, it is sufficient that the government traced tainted funds and property involved in money laundering to the defendant account and alleged that those same funds were reinvested over time.

In part, Edge relies on *United States v. Any and All Ownership Interest Held in the Name, On Behalf of For the Benefit of Joseph Taub*, an unpublished opinion, in which the Court held the government's tracing was insufficient at the pleading stage.  No. 16-9158 (JMV)(JBC), 2020 WL 278762 (D.N.J Jan. 16,2020).  Unlike the *Taub* case, Edge is not asserting that the government failed to sufficiently allege the $77 million was derived from the fraud scheme or

that money laundering violations with fraud funds occurred.  The crux of Edge's argument is that the government did not sufficiently allege the funds derived from or involved in the violations are located in the seized bank account.  Thus, its reliance on *Taub* is misplaced, because the *Taub* Court's primary concern was the amount of profits generated and deposited from the scheme itself.  *Id*. at \*11.[4]  In contrast, the Complaint in this matter directly traced the proceeds of the fraud and money laundering into the defendant account.

### ii.  Property involved in Money Laundering Transactions

Edge also seems to ignore the money laundering transactions alleged in the Complaint entirely.  The Tenth Circuit has recognized that property involved in money laundering can include untainted funds if they are used to facilitate the prongs set forth in 18 U.S.C. §§ 1956 or are part of the corpus of 18 U.S.C. § 1957 violation.  *See Bornfield*, 145 F.3d at 1135.  As noted by the Ninth Circuit and others, "the commingling of tainted money with clean money taints the entire account." *United States v. Lazarenko*, 564 F.3d 1026, 1035 (9th Cir. 2009) (citing *United States v. English*, 92 F. 3d 909, 916 (9th Cir. 1996)).

For purposes of pleading, the government can allege facts showing monetary transactions without setting forth the tracing of clean and tainted funds.  *Medina-Rodriguez*, 471 F. Supp. 3d at  481 ("The United States "is not required to demonstrate full tracing of all account activity to prove money laundering," because "the pleading standard for tracing funds in a civil forfeiture complaint is not exacting.") (citing *United States v. All Assets Held in Account No. 80020796*, 83 F. Supp. 3d 360, 314 (D.D.C. 2015)).

The Complaint alleges numerous entities, including Edge, that were used to hide Robert Brockman's actual ownership and control over them.  During the Reynolds & Reynolds debt

---

[4] Although the *Taub* court granted the motion to dismiss the complaint, the court permitted the government amend the complaint.  *Id*. at \*12.

buy-back fraud scheme, Edge was used by Evatt Tamine and Mr. Brockman to purchase Reynolds & Reynolds debt without disclosing Mr. Brockman as an affiliate to the financial institution who were selling the debt.  (ECF Doc. 1 at ¶¶38, 54-63).  In addition, Edge's accounts as well as other accounts controlled by Mr. Brockman were then used to conduct financial transactions using the fraud proceeds.  All of the transactions supporting the allegations in the Complaint exceed $10,000 of unlawful funds.[5]  By way of example, the initial $80 million dollar transfer from Edge's Bermuda account to defendant Mirabaud account when it was opened consisted of $33,869,037.73 in fraud funds.  *Id*. at ¶106.  This transaction occurred after Butterfield Bank became aware of Mr. Brockman's association with the trust entities.  *Id*. at ¶101.  All of the funds used in the transactions that were funded, in part, with fraud proceeds as alleged in the complaint are property involved in money laundering under 18 U.S.C. § 1956, and/or §1957.  Indeed, given the factual allegations in the Complaint, the government could have alleged $125 million was derived from the money laundering transactions, but decided to take a more conservative approach.  *Id*. at ¶¶106-107 (the initial $80 million of commingled funds transferred to the Mirabaud account plus $45 million of commingled funds transferred to the Mirabaud account); *see United States v. $1,707,937.91 in Funds Seized From Atl. Cap. Bank Acct. No. XXXXXXXXX, Held in Name of Concentric Health All. LLC*, No. 1:20-CV-03194-SDG, 2021 WL 1574743, at *4 (N.D. Ga. Apr. 22, 2021) (denying claimant's Motion to Dismiss where government sufficiently alleged money laundering, which allows for the forfeiture of commingled untainted funds, such that Complaint sufficiently pleads that the entire account was used in a money laundering transaction and, therefore, subject to forfeiture).

---

[5] In addition to 18 U.S.C. § 1957, there are other money laundering prongs under 18 U.S.C. § 1956 that would also apply to the various transactions.

Edge's argument for dismissal relies solely on the traceability of the funds and ignores that Edge, as an entity, was used to both commit the wire fraud and then laundering of the tainted funds. The broad authority under Section 981(a)(1)(A) permits the government to forfeit a business entity and all of their assets when the business is used to conduct the money laundering transactions, or it offers legitimacy to the otherwise unlawful conduct. *See, e.g.*, *United States v. Warshak*, 631 F.3d 266, 332 (6th Cir. 2010) (forfeited all proceeds, including legitimate proceeds, from a fraudulent retail business since all sales "were the outgrowth of [defendant's] fraudulent beginnings."); *United States v. Seher*, 562 F.3d 1344, 1369-70 (11th Cir. 2009) (forfeiture of two jewelry stores' inventories, because the business itself created a "façade of legitimacy"); *United States v. $7708.78 in U.S. Currency,* No. 1:08cv1463-LG-RHW, 2011 WL 3489835, at *3 (S.D. Miss. Aug. 9, 2011) (all assets of a pharmacy used as a cover for the illegal distribution of drugs is forfeitable as facilitating property, even if some of the business was legitimate). Thus, traceability may not even be an issue other than to prove the various money laundering transactions by Edge contained some proceeds from a specified unlawful activity.

### iii. Indictment

Edge's argument that the Complaint and Indictment are contradictory is a red herring. (ECF Doc. 54 at p.8-9). Specifically, Edge asserts that "the Indictment purports to trace the alleged proceeds of the Reynolds & Reynolds debt refinancing from Edge's BCB account to . . . an entirely different account at Mirabaud Bank, owned by Point Investments, Ltd., not Edge." *Id*. at p.8. The government does not assert, and did not allege in the Complaint, that the Indictment included the tracing of the subject seized funds. Further, both the allegations in the Complaint and Indictment can be true, and different. Edge has simply misconstrued the allegations in the Indictment. In November 2012, fraud proceeds from Edge's account at

Bermuda Commercial Bank Account were transferred to VEPF III-Parallel to purchase an asset –
SumTotal debt.  *Id.* at ¶¶ 93-94.  This purchase by Edge in SumTotal allowed for the return of
Point's prior investment in SumTotal to be paid out in capital gains and profits, which were sent
to Point's Mirabaud account.  *Id.* at ¶ 95; *see also Brockman*, 4:21-cr-00009-1 (ECF Doc. 2 at
¶191(e)-(g).  As alleged in the Complaint and the Indictment, Brockman effectively used fraud
proceeds to leverage the release of funds committed to SumTotal through a different entity,
Point.  However, Point's capital gains and profits are distinct and separate from the interest and
proceeds from the sale of the SumTotal debt realized by Edge from its purchase of the debt with
fraud proceeds, which are set forth in detail in the Complaint.  *See* (ECF Doc. 1 at ¶¶96-97).
Moreover, while it is true that the Indictment does not reference the movement of proceeds from
Edge's Bermuda account to Edge's Mirabaud account from where the subject funds were seized,
the Indictment did include: charges and overt acts of the wire fraud supporting the underlying
predicate criminal act of wire fraud in the Complaint; the movement and transfers of some of the
fraud proceeds in support of different money laundering violations, including the purchase of
defendant 121 Ash Road, Basalt, Colorado; and charges and overt acts of numerous other
violations that generally support the same conduct and schemes at issue in the Complaint.  Put
simply, some, but not all of the same conduct, alleged in the Complaint was also in the
Indictment, which is supported by a grand jury's probable cause finding.  Thus, instead of
contradicting the Complaint, it bolsters it.

### iv.  18 U.S.C. § 984 is Inapplicable to Directly Traceable Funds

Finally, Edge also spends a significant portion of the Motion to Dismiss, discussing
forfeiture provisions that "lessen" the tracing requirements and how they are unavailable to the
government in this case.  (ECF Doc. 54 at p. 10-13).  This argument is another red herring.  The

government has not, and is not, asserting that the Mirabaud funds are forfeitable under an *in personam* substitute asset provision or based on the use of 18 U.S.C. § 984.  Those statutes permit the government to forfeit otherwise legitimately obtained funds in lieu of dissipated criminal proceeds.  The government does not seek to do that in this case.  *See* 18 U.S.C. § 984(d); *United States v. Sixty-One Thousand Nine Hundred Dollars*, 10 Civ. 1866 (BMC), 2010 WL 11623206, at *4 (E.D.N.Y. Sept 8, 2010) ("the shorter statute of limitation in § 984 does nothing to limit the Government's right to pursue traceable funds in civil forfeiture actions."). Rather, the government is alleging that approximately $48,869,037.73 of the defendant funds are fraud proceeds and property traceable thereto, as well as property involved in money laundering, (ECF Doc. 1 at ¶¶106-107; 110), and an additional $30 million is solely property involved in money laundering violations.  *Id*. at  ¶106-107, ¶111.  As set forth above, the government has met its burden of pleading a connection between the subject funds and the criminal acts and understands its burden to prove these allegations by a preponderance of the evidence at trial.

## CONCLUSION

Claimant Edge's motion should be denied because the United States' Complaint meets the pleading standard set forth in Supplemental Rule G(2)(f).  To the extent the Court finds any allegations insufficient, the United States requests that the Court permit the United States to file a motion to amend to add in additional factual allegations obtained since the filing of the Verified Complaint in accordance with 18 U.S.C. § 983(a)(3)(D).

DATED this 27th day of January 2023.

Respectfully submitted,

COLE FINEGAN
United States Attorney

*s/ Tonya Andrews*

17

Tonya Andrews
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0100
Fax: 303-454-0405
Email: tonya.andrews@usdoj.gov

s/ *Laura B. Hurd*
Laura B. Hurd
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0100
Fax: 303-454-0405
Email: laura.hurd@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January 2023, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to all counsel of record.

s/ *Sheri Gidan*
FSA Paralegal
U.S. Attorney's Office