IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-00796-MEH

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.       121 ASH ROAD, BASALT, COLORADO,
2.       APPROXIMATELY $77,888,782.61 HELD AND FROZEN IN MIRABAUD BANK ACCOUNT #509951,

        Defendants,

and

EDGE CAPITAL INVESTMENTS, LTD.,

        Claimant.

---

### CLAIMANT EDGE CAPITAL INVESTMENTS, LTD.'S REPLY IN SUPPORT OF MOTION TO DISMISS VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

---

      The government in opposition argues it adequately alleged the offense conduct and the movement of funds into the Mirabaud account in 2013/2014, but the sufficiency of those allegations (accepted as true only for purposes of this motion to dismiss) is beside the point. The government must plead sufficiently detailed facts connecting the seized property to the underlying offense. On this, the Complaint suffers a fatal flaw: it fails to allege any fact connecting the 2013/2014 deposits of alleged offense proceeds to the Defendant Funds frozen six years later in 2020.

1. **The Pleading Standards and Statutory Requirements Require More Than Mere Presumption to Connect an Alleged Offense to the Seized Property**

The government's multi-page recitation of pleading standards and statutory requirements does nothing to cure the defect.  The pleading standards require the government to state *"sufficiently detailed facts"* to support a reasonable belief that it will be able to meet its burden of proof at trial on each element of its claim.  Fed. R. Civ. P. Supp. R. G(2)(f) (emphasis added).  The "plain language of the relevant [statutory] provisions indicates that the stated nexus – involved in, traceable to, and proceeds – is an element of the civil forfeiture claims.  Accordingly, and at a minimum, the Government must plausibly plead the requisite connection between the underlying offense and the seized property."  *United States v. Any and All Ownership Interest Held in the Name,* Civ. Action No. 16-9158 (JMV)(JBC), 2020 WL 278762, at *9 (D.N.J. 2020) (citing 981(a)(1)(A) & (C)).  The Complaint here fails to plead any fact, much less sufficiently detailed facts, connecting the alleged offenses to the money seized in 2020.

The government relies on the allegations in paragraphs 106-109 of the Complaint, but they do not bridge the six-year gap between the deposits of allegedly "traceable" proceeds in 2013/14 and the money seized in 2020.  Paragraphs 106 and 107 merely allege that the 2013/2014 *deposits* were traceable to the earlier offenses but do not allege any connection to the money seized six years later.  Paragraph 108 states the obvious – that the funds in Claimant's Mirabaud account in 2018 originated with, and belong to, Claimant: "According to Tamine [director of Claimant Edge Capital Investments, Ltd.], as of the date of his initial cooperation in this case in October of 2018, over $125 million sourced to [Claimant] Edge Capital Investments, Ltd. was sitting in [Claimant's] Mirabaud Bank account in Switzerland."  Compl. ¶ 108.  That

paragraph does not allege the funds in the account were connected to the offense or to the 2013/2014 deposits.

Paragraph 109 contains the sole allegation as to what happened to the 2013/2014 deposits: the funds "continued to be invested in general interest-bearing investment vehicles." This paragraph is notable for what it does not say. Importantly, it does not allege that the funds invested in those vehicles were returned to the account. It does not allege in what vehicles or for how long the funds were invested. And it does not allege whether the funds were in the account or invested elsewhere six years later when the account was seized.

The government's thesis seems to be that, because it has alleged Robert Brockman (not Claimant) engaged in illegal activities which generated proceeds, some of which were allegedly connected to two deposits into Claimant's Mirabaud account in 2013 and 2014, the funds seized six years later from that account *ipso facto* were the same funds or involved in, traceable to, or derived from them. The government is not entitled to that presumption under the pleading standards, which require "sufficiently detailed facts," or under the plain language of the statutes at issue, which require a nexus. Civil forfeiture pleading requirements are "more than a mere technicality." *United States v. One Partially Assembled Drag Racer,* 899 F. Supp. 1334, 1340 (D.N.J. 1995). "[T]hey are a means of upholding this drastic remedy against a possible due process challenge and of preventing the seizure of the defendant property for long periods of time when, in fact, the government ha[s] no claim to the property." *Id.* If the government's presumption were sufficient, it would subject to forfeiture all accounts into which an allegedly tainted deposit was once made years or decades before.

The government attempts to circumvent its pleading burden by arguing it is enough that the Claimant understands its theory of forfeiture. The government's theory, however, is based

3

on its *assumption* that the Defendant Funds seized in 2020 are connected to the deposits six years earlier.  It is not enough that Claimant understands that the government *assumes* the seized funds are connected to the 2013/2014 deposits.  Even under the government's parsing, the pleading standard requires "enough *facts* so that claimant may understand the theory of forfeiture . . .," *U.S. v. One Gulfstream G-V Jet Aircraft,* 941 F. Supp.2d 1, 14 (D.D.C. 2013) (emphasis added), and not just conclusory assumptions: "The government cannot proceed by casting general allegations of lawlessness. . . Absent some specific indication that the [seized property] is derived from or traceable to illicit activity, the complaint must be dismissed." *Id.* at 16.  None of the government's forfeiture theories allow it to plead anything less than "sufficiently detailed facts" to show a nexus between the offense conduct and subject funds.

  2. **The Government's Forfeiture Theories Do Not Diminish Its Pleading Requirements**

    a. *The Complaint Fails to Allege Facts Tracing the Alleged Offenses to the Defendant Funds*

Bobbing and weaving to dodge its pleading requirements, the government first argues that the pleading standard for tracing funds is "not exacting."  The cases it cites in support of that characterization, however, do nothing to lessen the government's burden.  They still require allegations of "specific facts" supporting traceability, *see, e.g., United States v. Approximately $25,829,681.80 in Funds,* No. 98 Civ. 2682 (LMM), 1999 WL 1080370, at *7 (S.D.N.Y. Nov. 30, 1999), *aff'd* 56 Fed. Appx. 40 (2nd Cir. 2003), just not all facts "demonstrating full tracing of all account activity," *United States v. All Assets Held in Acct. No. XXXXXXX,* 83 F. Supp. 3d 360, 379 (D.D.C. 2015).  Moreover, in neither case cited by the government on this was there an unexplained, disconnected, multi-year gap between the deposit of alleged offense proceeds and seizure.  In *All Assets*, the government alleged facts *directly tracing* the proceeds from the liquidation of bonds purchased to launder offense proceeds into the investment portfolio

accounts. *Id.* at 366. And in *$25,829,681*, tracing was not at issue: the forfeiture action was instituted less than three months after alleged offense proceeds were deposited into the subject accounts, during which time the funds had been deposited with the court in an interpleader action. *$25,829,681*, 1999 WL 1080370, at *1-2.

The government next argues that it need not plead traceability because it is an issue of fact for trial. The cases it cites in support of that mistaken proposition, however, dealt with the problem of tracing "when the subject account *undisputably* contained both legitimate and criminally fraudulent funds, as *facts* supported an inference that the property was subject to forfeiture." *All Funds on Deposit in Dime Sav. Bank of Williamsburg Account,* 255 F. Supp. 2d 56, 68-69 (E.D.N.Y. 2003) (emphasis added). The inadequate tracing of funds in an undisputably commingled account is not the issue here; there is no need to *separate* tainted and untainted funds because the government has failed to allege any fact tracing the alleged tainted funds through the account for six years to the Defendant Funds. It fails to allege facts supporting a reasonable belief that there were commingled or even that there were tainted funds in the account when Defendant Funds were seized. Instead, it alleges that the deposits in 2013/14 were invested in interest-bearing vehicles elsewhere, *i.e.,* not sitting in the account.

Conceding the deficiency in the Complaint at last, the government argues that the requisite tracing *facts* are contained in bank statements within the Claimant's knowledge. Gov't Res. 10. However, the burden of pleading sufficient facts to connect the property seized to an offense appropriately belongs to the government: "[a]lthough the government need not prove its entire case at the pleading stage, it '*must plead facts*' rather than conclusory allegations, . . . *even where the claimant is already in possession of those facts.*" *U.S. v. One Partially Assembled*

*Drag Racer,* 899 F. Supp. 1334, 1341-42 (D.N.J. 1995) (citing *Delaware Ave. No. 1,* 661 F. Supp. at 163) (second emphasis added).[1]

The government simply ignores the many cases cited in Claimant's opening brief dismissing civil forfeiture complaints where the allegations of a connection between the seized property and the predicate acts were "too vague," "conclusory," "bald," or provided only "an intimation." *See* Claimant's Mot. 7-8 (citing cases). It attempts to distinguish only *United States v. Any and All Ownership Interest Held in the Name, On Behalf or For the Benefit of Joseph Taub ("Taub"),* Civil Action No. 16-9158 (JMV)(JBC), 2020 WL 278762 (D.N.J. Jan. 16, 2020), on the basis that the "Court's primary concern was the amount of profits generated and deposited from the scheme itself." Gov't Res. at 13. But the government misreads *Taub*, where the Court itself described its primary concern as directly on point:

> The real issue, in the Court's view, is the degree of connection that the [First Amended Complaint] must allege between the underlying offenses and the property seized – whether the connection be characterized as tracing, related, a nexus, or some similar term. The Government contends that while it has sufficiently traced the seized property to the Scheme and the money laundering allegations, it is not required to do so at the pleading stage. Opp. at 35 ("[T]he government need not trace the defendants *in rem* to the underlying offenses at the motion to dismiss stage[.]") (citing *United States v. Aguilar*, 782 F.3d 1101, 1109 (9th Cir. 2015). The Government is correct that the Ninth Circuit in *Aguilar* indicated that "tracing is not at issue at the motion to dismiss stage" and that "the government need not show that all of the claimed property is tainted to satisfy Supplemental Rule G(2)(f)." *Aguilar*, 782 F.3d at 1109. The Court, however, disagrees in light of the plain language of the statutes at issue, the extraordinary nature of pre-adjudication seizures, and persuasive authority found in other decisions.

The *Taub* Court found – in light of the relevant forfeiture provisions indicating that the stated nexus is an element of civil forfeiture claims that must be plausibly plead and the need to ensure that the extraordinary remedy of forfeiture was carried out scrupulously within

---

[1] For avoidance of doubt, Claimant does not concede that bank statements show the requisite connection.

constitutional bounds – that the complaint did "not sufficiently allege a nexus between the underlying offense and the seized property," because its allegations were conclusory, and thus dismissed the complaint. *Taub,* at \*9-12. The Complaint in this case should be similarly dismissed.

> b. *The Complaint Is Devoid of Any Factual Allegation that Defendant Funds Were "Involved In" Money Laundering*

The government next tries to save the Complaint by falling back on its money laundering allegations. In essence, the government argues that, because it has alleged money laundering, it need not allege facts connecting the seized Defendant Funds to either the money laundering offense or the underlying offense. In the government's view, an allegation of money laundering subjects all property belonging to its owner to forfeiture. Gov't Res. 15. Fortunately, that is not the law. A complaint must allege factual support linking the monies seized in an account to a criminal act. As the court observed in *U.S. v. $448,342.85,* 969 F.2d 474, 476 (7th Cir. 1992):

> Shooting for the moon, the United States insists that it matters not whether the balances in the accounts may be traced to "specified unlawful activity". The accounts were "involved in" the fraud during 1988, and that is that. This approach treats the accounts as the criminals, taking the concept of deodands one step further (an account is not even a tangible object). Bank accounts do not commit crimes; people do. It makes no sense to confiscate whatever balance happens to be in an account bearing a particular number, just because proceeds of crime once passed through that account.

None of the cases cited by the government (at pp. 13-15) require anything less than a nexus between the seized property and the offense. Moreover, all are beside the point because, unlike here, they arise from forfeitures of business entities following criminal conviction. *See United States v. Warshak,* 631 F.3d 266, 274, 319-321, 330 (6th Cir. 2010) (finding sufficient evidence to support TCI, Inc.'s conviction for money laundering, and stating that in forfeiture phase of criminal trial, "the jury found that the government had established the

requisite nexus between certain assets and the crimes of both fraud and money laundering"); *United States v. Seher,* 562 F.3d 1344, 1369-70 (11th Cir. 2009) (finding "no evidence in the record . . . linking a Chaplin [Inc.'s] bank account to the . . . laundering offenses" and therefore vacating forfeiture of Chaplin Inc.'s bank accounts). Notwithstanding the government's threats that it has the authority to forfeit all of Claimant's assets (which provide a compelling reminder that "[f]orfeitures are not favored" and "should be enforced only when within both letter and spirit of the law," *In re One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. 219, 226 (1939)), Claimant itself has not been indicted nor is it a defendant in any civil forfeiture proceeding.[2]

Even if the case law supported the government's position, it would not matter because the Complaint does not allege any fact supporting an inference that the seized money was "involved in" or used to "facilitate" the alleged laundering offense six years earlier. Although the government argues that commingling of tainted money with clean money taints the entire account, there is no allegation of commingling. The Complaint does not allege that purportedly tainted money deposited in 2013/14 commingled with other money in the account, which then sat in the account until it was seized in 2020; rather, it alleges that the tainted money was invested elsewhere.

    c. *The Indictment Does Not Remedy the Complaint's Deficiency*

The government concedes that the Indictment (which was dismissed after the defendant's death) does not reference the movement of alleged offense proceeds into Claimant's Mirabaud account. Gov't Res. 16. Thus, by the government's own admission, it does not allege any fact

---

[2] Footnote 3 to the government's opposition, which consists solely of unsupported assertions, is factually inaccurate in a number of respects. It is, in any event, utterly irrelevant to the issues presented here.

connecting the offense to Defendant Funds and does not cure the pleading defect in the Complaint.

### 3. Section 984 Applies Precisely to This Situation Where the Government Seeks to Forfeit Fungible Property Not Directly Trace to the Offense

If the government cannot allege a nexus connecting fungible property to the offense, then the government must proceed under Section 984. Under that section, forfeiture may be sought for fungible property that is "found in the same . . . account as the property involved in the offense that is the basis for the forfeiture"—but with the trade-off of a short one-year statute of limitations. 18 U.S.C. § 984(a)(1), (b). The government here tries to pick and choose, taking advantage of Section 981's longer statute of limitations while arguing that, in effect, it need not plead any more than required under Section 984. That it cannot do.

The government summarily dismisses this point of law as a "red herring," claiming that Section 984 does not apply to "directly traceable funds," while failing to recognize that it has not alleged "directly traceable funds" here. Neither the Complaint nor the Indictment allege that the funds seized from Mirabaud Bank Account #509951 in 2020 were directly traceable to the funds deposited in that account in 2013/2014. Nothing bridges that six-year gap but sheer speculation. Congress created Section 984, with its exacting statute of limitations, for precisely such situations, and the government should not be able to circumvent its Section 981 pleading requirement by resorting to assumptions and speculation.

## CONCLUSION

For all of the foregoing reasons, the Complaint should be dismissed as against Defendant Funds, the Defendant Funds should be released from seizure, and the government should be ordered to request that the Swiss authorities vacate their restraining order.

Respectfully submitted,

**AEGIS LAW GROUP LLP**

By: *Branden Lewiston*
Branden Lewiston
801 Pennsylvania Ave, NW, Suite 740
Washington, DC 20004
Tel: (202) 737-3500
Fax: (202) 735-5070
blewiston@aegislawgroup.com

*Counsel for Claimant*
*Edge Capital Investments, Ltd.*


**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice to all counsel of record.

/s/ Branden Lewiston

10