IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br>v.<br><br>1. 121 ASH ROAD, BASALT, COLORADO,<br><br>2. APPROXIMATELY $77,886,782.61 HELD AND FROZEN IN MIRABAUD BANK ACCOUNT #509951,<br><br>*Defendants*<br>and<br><br>EDGE CAPITAL INVESTMENTS, LTD. and HENKE PROPERTY LLC,<br><br>*Claimants.* | Civil Action No.<br>1:21-cv-00796-MEH<br><br>**UNOPPOSED MOTION** |

### UNOPPOSED MOTION TO INTERVENE FOR LIMITED PURPOSE OF PROTECTING CONFIDENTIAL DOCUMENTS AND INFORMATION

1. Universal Computer Systems Holding, Inc. ("UCSH") and The Reynolds and Reynolds Company ("Reynolds") (collectively "Intervenors") file this Motion to Intervene ("Motion") under Fed. R. Civ. P. 24(b)(1)(B) to protect interests in documents and information which have been or will be disclosed by Plaintiff United States of America ("United States"), and to address common questions of law and fact.

### I. INTRODUCTION

2. The United States brought this action pursuant to the civil forfeiture provisions of 18 U.S.C. §§ 981(a)(1)(A) and (C). The United States seeks forfeiture of certain real property known as 121 Ash Road, Basalt, Colorado, and all the appurtenances and attachments thereto, and funds held

- 1 -

and frozen in Mirabaud Bank account #509951. Answers have been filed by Claimants Edge Capital Investments, Limited ("Edge") and Henke Property LLC ("Henke") (collectively "Claimants").

3. Paragraph No. 113 of the United States' Verified Complaint for Forfeiture *In Rem* ("Complaint") references an October 1, 2020, indictment of Robert T. Brockman ("Mr. Brockman") by a grand jury in the Northern District of California. Mr. Brockman, now deceased, was the CEO of UCSH, its wholly owned subsidiary Dealer Computer Services, Inc. ("DCS"), and Reynolds, which is a wholly owned subsidiary of DCS.

4. Over the course of the period beginning in September of 2018 and continuing through October of 2021, at least thirteen (13) Grand Jury subpoenas were served on UCSH and certain of its officers and directors requesting the production of documents such as: corporate booking records and other financial records; inventory records; corporate minute book, stock register or other records reflecting ownership of corporate stock; corporate acquisition documents; all records/documents relating to various domestic and foreign entities; all records/documents relating to Board of Directors meetings; Officer/Board member email communications; and other records and documents. The Grand Jury subpoenas included requests for records, documents and information found on the Reynolds email server. UCSH complied with the Grand Jury subpoenas by producing over 100,000 pages of documents.

5. On November 1, 2023, the current parties in this action filed a Joint Status Report of November 1, 2023 ("Joint Status Report"). The Joint Status Report reflects that, among other things: (1) "courtesy production" of documents have been made by the United States to Claimants in July and November of 2022, at least some of which "did not necessitate a protective order"; (2) in May of 2023, the United States provided discovery responses to Claimant Edge which included

the production of over 1 million documents; (3) in July of 2023, the United States provided discovery responses to Claimant Henke which included the production of over 6500 documents; (4) in June of 2023, the United States Attorney's Office for the District of Colorado drafted and sent a proposed motion for disclosure of Grand Jury material to the criminal Assistant United States Attorney ("AUSA") in the Northern District of California, who appeared before the Grand Jury as it relates to the indictment of Mr. Brockman; (5) the criminal AUSA is currently seeking approval from their upper management as it relates to this request and matter; and (6) the United States has also apprised counsel for Claimant Edge of their ability to file a motion seeking the requested information in the Northern District of California under Fed. R. Crim. P. 6(e). Presently, UCSH has no way to determine whether the parties in this action contemplate the disclosure of documents produced to the Grand Jury and/or testimony before the Grand Jury.

6. Unless Intervenors are allowed to intervene in this action, they have no way of knowing which of their documents and information has been provided or is contemplated to be provided by the United States to Claimants, or whether there are documents and information disclosed and/or to be disclosed that were provided to the United States outside the grand jury process. The Joint Status Report, however, contains sufficient information to justify intervention by Intervenors in this case to protect confidential documents and information.

## II. BACKGROUND FACTS

### A. The Businesses of UCSH and Reynolds

7. UCSH is a holding company based in Houston, Texas.

8. Reynolds is a duly organized Ohio corporation. Reynolds was founded in 1866 as a forms printing company. In 1927, Reynolds entered the automotive space with standardized accounting forms. In 1960, Reynolds pioneered the use of computer technology in automotive dealerships.

Reynolds is headquartered in Dayton, Ohio, with operations in the United States, Canada, and Europe, including significant operations in Houston, Texas.

9. Reynolds provides software, business forms, and professional services for automotive retailers. Reynolds offers sophisticated web technologies and the only Retail Management System for the automotive industry.

10. Reynolds has over 4,300 employees that provide support, maintenance, development, and other services to its dealership customers and internally.

11. Reynolds is a wholly owned subsidiary of DCS, which in turn is a wholly owned subsidiary of UCSH.

### B. Indictment of Mr. Brockman

12. According to Paragraph No. 6 of the Complaint, Mr. Brockman was CEO of businesses which included UCSH, DCS, and Reynolds.

13. According to Paragraph No. 11 of the Complaint, Reynolds was acquired by UCSH in 2006.

14. Paragraph Nos. 15 through 26 of the Complaint describe a "2006 Reynolds & Reynolds Acquisition" under the heading "Overview of Bank and Wire Fraud Scheme".

15. Allegations are made in Paragraph Nos. 54-63 of the Complaint under the heading "Reynolds & Reynolds Failed to Disclose the Affiliate Purchase by Edge Capital Investments, Ltd., on Ernst & Young Audited Financial Statements – 2008 and 2009".

16. In numerous paragraphs in the Complaint there are references to "Reynolds & Reynolds debt buyback scheme", "Reynolds & Reynolds fraud proceeds", "Reynolds and Reynolds debt buyback proceeds", and "Reynolds & Reynolds debt buyback fraud funds".

17. In paragraph Nos. 113 and 114 of the Complaint under the heading "<u>Criminal Indictment</u>", the Complaint alleges that a Grand Jury in the Northern District of California on October 1, 2020,

returned an Indictment charging Mr. Brockman with tax evasion, FBAR violations, wire fraud affecting a financial institution, concealment money laundering, tax evasion money laundering, international concealment money laundering, evidence tampering, and destruction of evidence; and that the wire fraud accounts were based on the Reynolds "debt buyback scheme".

### C. Procedural Status of this Case

18. While not clear as to the number of documents produced, counsel for the parties agreed that approximately 90,000 of approximately 825,000 documents offered by the United States would be, and were, the subject of a courtesy production in February of 2023 and that at least the July 2022 production did not "necessitate a protective order".

19. According to Paragraph No. 5 of the Joint Status Report, the United States has provided over 1 million documents to Claimant Edge.

20. According to Paragraph No. 7 of the Joint Status Report, the United States has produced over 6,500 documents to Claimant Henke.

21. According to Paragraph Nos. 4 and 6 of the Joint Status Report: The United States advised in April 2023 that it was authorized to disclose Grand Jury materials but was working on a disclosure order as a prophylactic measure before sharing such materials. In June 2023, the United States Attorney's Office for the District of Colorado had sent a proposed motion for disclosure of Grand Jury material to the criminal AUSA in the Northern District of California, who appeared before the Grand Jury as it relates to the indictment of Mr. Brockman. The United States has apprised counsel for Claimant Edge of its ability to file a motion seeking the requested information in the Northern District of California under Fed. R. Crim. P. 6(e).

22. In the Consent Motion to Extend Discovery Deadlines filed by Claimants on December 4, 2023, with the consent of the United States, Claimants reported that the parties have diligently engaged in discovery, including reviewing the United States' production of over one million

documents, and that Claimants continue to await the United States' motion for the disclosure of grand jury materials. The motion requested, among other things, an extension of Fact Discovery Cut-off to May 28, 2024, and the motion was granted on December 4, 2023.

### D. The Protective Order Entered in this Case

23. On February 10, 2023, the Court entered a Protective Order in this case ("Protective Order").

24. Under the Protective Order:

    (a) The Confidential Information definition is limited to certain undefined categories and requires a party to designate. (Paragraph No. 2);

    (b) An inadvertent failure to designate, while not a waiver of claim of confidentiality under the Protective Order, cannot be remedied after 90 days have passed. (Paragraph No. 4);

    (c) The designation of deposition testimony and any exhibits thereto must take place within an undefined reasonable time after delivery of the deposition transcript. (Paragraph No. 5);

    (d) The list of persons who can view Confidential Information includes party agents, counsel agents, experts, consultants, investigators, fact witnesses (potential, anticipated or actual) and counsel to those witnesses, and other persons the parties agree on. (Paragraph No. 6(b)). It is undisputable that the parties in this action have not agreed to permit Intervenors to view the Confidential Information;

    (e) A hearing challenging a claim of Confidential Information can be held with no opportunity for a third party with an interest in the records or information to participate in the hearing. (Paragraph No. 8);

    (f) Parties' counsel can retain attorney work product referring or relating to Confidential Information and use that work product in subsequent litigation. (Paragraph No. 10(c)); and

    (g) The Attachment A agreement to be signed by third parties who will be provided with Confidential Information prohibits disclosure of Confidential Information, but not use of the Confidential Information.

### III. ARGUMENT

**A. This Court Should Permit UCSH And Reynolds to Intervene Under Fed. R. Civ. P. 24(b)**

25. The Tenth Circuit follows "a somewhat liberal line in allowing intervention." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) (quotations omitted). The central concern in deciding whether intervention is proper is "the practical effect of the litigation on the applicant for intervention." *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (citing *San Juan County v. United States*, 503 F.3d 1163, 1193 (10th Cir. 2007) (en banc)).

26. Rule 24(b) is the proper procedural mechanism for a non-party like Intervenors to challenge a protective order. *See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) ("The courts have widely recognized that the correct procedure for a nonparty to challenge a protective order is through intervention for that purpose."). A court may permit anyone to intervene who files a timely motion, and who "is given a conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(A), (B). A court must also consider whether intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

27. In the context of third-party claims of access to information generated through judicial proceedings, courts apply a flexible approach to the "common question of law or fact" requirement.

*See United Nuclear Corp.*, 905 F.2d at 1427 ("When a collateral litigant seeks permissive intervention solely to gain access to discovery subject to a protective order, no particularly strong nexus of fact or law need exist between the two suits."). The Tenth Circuit's flexible approach to the "common question of fact or law" requirement has been extended to non-parties seeking to modify protective orders for purposes of gaining public access to protected or sealed materials. *See, e.g., SanMedica Int'l v. Amazon.com Inc.*, No. 2:13–CV–00169, 2015 WL 6680222, at *2 (D. Utah Nov. 2, 2015); *Angilau v. United States*, 2:16–00992–JED–PJC (D. Utah July 27, 2017) (ECF No. 81), *aff'd*, No. 216CV00992–JED–PJC, 2018 WL 1271894 (D. Utah Mar. 9, 2018). Further, "[e]very court of appeals to have considered the matter has come to the conclusion that Rule 24 is sufficiently broad gauged to support a request of intervention for the purposes of challenging confidentiality orders." *Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000); *see also Pansy v. Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994) ("[A]ny party challenging a confidentiality order "meet[s] the requirement of Fed. R. Civ. P. 24(b)(2) that their claim must have 'a question of law or fact in common' with the main action."); *see Young v. Glanz*, No. 13-CV-00315-JED-JFJ, 2018 WL 1588026, at *6 (N.D. Okla. Mar. 31, 2018).

### B.   The Motion to Intervene is Timely

28. Intervenors recognize that "an application for intervention must be timely...." *United Nuclear Corp.*, 905 F.2d at 1427. The timeliness of a motion to intervene is assessed "in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Sanguine, Ltd. v. United States Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984) (citations omitted).

29. The Tenth Circuit has "recognized three factors as particularly important: '[(1)] the length of time since the [movant] knew of [its] interests in the case; [(2)] prejudice to the existing parties;

[and (3)] prejudice to the [movant]." *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc*, 619 F.3d 1223 (10th Cir. 2010) (citing *Sanguine, Ltd.*, 736 F.2d at 1418).

30. The Tenth Circuit analyzed the timeline issue in *Utah Ass'ns of Counties*. In that case, the complaints were filed in 1997 and the motion for leave to intervene was not filed until 2000. The district court held that 2.5 years was too late for intervention. The Tenth Circuit disagreed and concluded that in light of the early stage of the litigation and the lack of prejudice to the plaintiffs flowing from the length of time between the initiation of proceedings and the motion to intervene, the request for intervention was timely. *Utah Ass'ns of Counties*, 255 F.3d at 1250-1251.

31. Consideration of the factors recognized by the Tenth Circuit supports a determination that the Motion is timely, because:

    (a) Intervenors first learned of the past disclosures, and potential disclosures, of its records, documents and information through the filing of the Joint Status Report by the parties on November 1, 2023;

    (b) There is no prejudice to the existing parties to this action as discovery has not been completed and no trial date has been set; and

    (c) The potential prejudice to Intervenors without its limited intervention is grave, given the nature of its records, documents and information and processes by which they came to be in the possession of the United States.

### C. The "common question of law or fact" requirement is met

32. A party that previously produced documents and information before the grand jury which then becomes the subject of a third-party's request for disclosure has an absolute interest in the matter and is allowed to intervene in the related proceeding. *See* comments to FRCRP Rule 6(e)(3)(D) (citing *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 218 n.8 (1979) when noting that "[t]here can be no question that there is standing under Art. III for petitioners to

object to the disclosure order, as release to their civil adversaries could result in a substantial injury to them").

33. The United States has, according to the Joint Status Report, disclosed over 1 million documents to Claimants. Until Intervenors are able to review information indicating which of these documents contain the Intervenors' information, the presumption should be that they do contain such information, given what was requested in Grand Jury Subpoenas served on UCSH. Moreover, to the extent that the United States has disclosed, or may in the future disclose, confidential records, documents and information not constituting grand jury materials, Intervenors should be allowed to intervene in light of its interests in confidentiality.

34. Circuit courts have widely recognized that the correct procedure for a nonparty to challenge a protective order is through intervention for that purpose. *See, e.g., United Nuclear*, 905 F2d at 1427; *Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 46 F3d 1042, 1045 (D.C. Cir. 1998) (citing cases); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783 (1st Cir. 1988); *Meyer Goldberg, Inc. of Lorain v. Fisher Foods*, 823 F2d 159, 162 (6th Cir. 1987); *In re Beef Industry Antitrust Litig.* 58 9 F.2d 786, 789 (5th Cir. 1979).

35. The Tenth Circuit is in agreement with the standard laid down by the Seventh Circuit:

> Where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification. Once such prejudice is demonstrated, however, the district court has broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order."

*United Nuclear*, 905 F.2d at 1428 (citing; *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1300 (7th Cir. 1980)).

36. The legitimate concerns of Intervenors are apparent given the efforts of Plaintiff and Claimants to effectuate disclosure of Grand Jury materials, and the disclosures already made of

over 1 million documents to Claimants. Intervenors believe that the Protective Order may not adequately protect their interests and may need to be modified, not only to address the below, but also any other concerns arising from the Intervenors' review of discovery responses already served by the parties. Intervenors intend to confer with the other parties about potential modifications to the protective order, including potential modifications to the following:

    (a)    The Confidential Information definition is limited to certain undefined categories and requires a party to designate. (Paragraph No. 2)

    (b)    An inadvertent failure to designate, while not a waiver of claim of confidentiality under the Protective Order, cannot be remedied after 90 days have passed. (Paragraph No. 4)

    (c)    The designation of deposition testimony and any exhibits thereto must take place within an undefined "reasonable time" after delivery of the deposition transcript. (Paragraph No. 5)

    (d)    The list of persons who can view confidential information includes party agents, counsel agents, experts, consultants, investigators, fact witnesses (potential, anticipated or actual) and counsel to those witnesses, and other persons the parties agree on (Paragraph No. 6(b)), but not Intervenors;

    (e)    A hearing challenging a claim of Confidential Information can be held with no opportunity for a third party with an interest in the records or information to participate in the hearing. (Paragraph No. 8)

    (f)    Parties' counsel can retain attorney work product referring or relating to Confidential Information and use that work product in subsequent litigation. (Paragraph No. 10(c))

  (g)  The Attachment A agreement to be signed by third parties who will be provided with Confidential Information prohibits disclosure of Confidential Information but not use of the confidential information.

### D. Intervention Will Not Unduly Delay or Prejudice the Adjudication of the Parties' Issues

37. The Joint Status Report indicates that discovery has not been completed, and no trial date has been set. Accordingly, there would be no undue delay or prejudice to the adjudication of the Parties' issues from the limited intervention requested by Intervenors.

## IV. CONCLUSION

38. For the foregoing reasons, the Court should grant permissive intervention for Intervenors under Rule 24(b).

Dated:  December 11, 2023

Respectfully submitted,

*/s/ William Leone*
William Leone
Norton Rose Fulbright US LLP
1225 Seventeenth Street, Suite 3050
Denver, CO 80202-1234
Tele: (303) 801 2750  /  Fax: (303) 801-2777
Email: bill.leone@nortonrosefulbright.com

Jasper G. Taylor III
Robert C. Morris
Eliot Turner
Norton Rose Fulbright US LLP
1301 McKinney St, Suite 5100
Houston, TX 77010-3095
Tele: (713)-651-5151  /  Fax: (713)-651-5246
Email: jack.taylor@nortonrosefulbright.com
Email: robert.morris@nortonrosefulbright.com
Email: eliot.turner@nortonrosefulbright.com

John C. Allen
John C. Allen P.C.
909 Fannin, Suite 3838
Houston, TX 77010-5670
Tele:  (713) 654-7000  /  Fax: (713) 654-7071
Email:  jallenpc@swbell.net

*Attorneys for proposed Intervenors UCSH & Reynolds.*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1, counsel for proposed intervenors spoke with counsel for the government on December 7, 2023 and counsel for claimants on December 8, 2023 to discuss the relief requested in this motion. Counsel for the government and counsel for the claimants all indicated that they do not oppose the relief requested in the motion.

*/s/ William Leone*
William Leone

## CERTIFICATE OF SERVICE

I certify that on the 11th day of December 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

*/s/ William Leone*
William Leone
